FORET, Judge.
Defendant, Safeco Insurance Company of America (SAFECO), appeals from a jury verdict rendered in favor of plaintiff, Patrick Darby, awarding damages, penalties, interest, and attorney’s fees.
On December 3,1983, Patrick Darby sustained serious personal injuries as a result of an automobile accident wherein he was a *38 passenger in a pickup truck owned and being operated by Randy Taylor (Taylor), which left the roadway, struck a ditch, and overturned.
Darby settled with Taylor’s insurer for policy limits under both liability and medical payments coverage. Darby then filed this action against SAFECO, claiming U.M. coverage under a policy issued by SAFECO to his father, Edwin Darby. SAFECO affirmatively pled denial of coverage to Patrick Darby on the basis of false and material misrepresentations allegedly made by Mr. and Mrs. Edwin Darby, with the intent to deceive SAFECO. The jury rendered a verdict in favor of Patrick and this appeal followed.
By this appeal, SAFECO contends that the jury erred in finding that Patrick was covered under his parents’ SAFECO policy. This contention is based upon the allegation that Patrick’s parents misrepresented to SAFECO that Patrick was no longer a member of the household and this alleged misrepresentation was the sole reason that SAFECO renewed Mr. and Mrs. Darby’s automobile insurance policy. For these reasons, SAFECO also contends that the jury erred in finding SAFECO unreasonable and without probable cause in refusing to tender unconditionally a reasonable amount to Patrick Darby.
By answer to this appeal, Patrick Darby prays for attorney’s fees and expenses incurred as a result of this appeal.
We reverse the jury’s findings that (1) Patrick was an insured under his parents’ SAFECO policy and, (2) Mr. and Mrs. Darby did not misrepresent facts which were material with the intent to deceive SAFE-CO. We further reverse the jury’s finding that SAFECO acted unreasonably and without probable cause in failing to unconditionally tender a reasonable amount to Patrick Darby. We deny Darby’s prayer for attorney’s fees and expenses as a result of this appeal.
SAFECO urges the following assignments of error:
1.The jury’s finding that on the date of the accident, December 3, 1983, Patrick Darby was covered by the Safeco policy.
2. The jury’s finding that neither Edwin Darby nor Mrs. Darby materially misrepresented to Safeco or its agent that Patrick Darby was not a member of the Edwin Darby household at the time that the policy was renewed.
3. The jury’s finding that Safeco acted unreasonably and without probable cause in refusing to tender unconditionally a reasonable amount to the plaintiff.
FACTS
In 1977, Edwin Darby first applied for automobile insurance coverage with SAFE-CO through the Dupre-Carrier-Godchaux Agency (hereinafter referred to as “The Agency”) in Opelousas, Louisiana. Named as the only drivers in the household were Edwin and his wife, Marjorie Darby. The agent who received the application, Mike Williams, noted on the application that, in his opinion, the risk was a good one because he knew the Darbys and they both had good driving records. Patrick Darby was 14 years of age at the time and was not yet eligible for a driver’s license when SAFECO issued this policy to Mr. Darby. After receiving the application, SAFECO sent a memo to the Agency inquiring whether Joan Darby, a daughter of the Darbys, was a member of the household. Mike Williams wrote SAFECO advising that, according to Mr. Darby, Joan was not a member of the household and owned her own vehicle.
In May of 1978, Mr. Darby signed an “Insured’s Statement” stating that Patrick, age 15, a child in the household, was operating the insured vehicle. Later in 1978, Mr. Darby completed and signed a questionnaire form from SAFECO which requested updated information regarding the use of the insured vehicles. He was asked to indicate the names of each household member with a driver’s license. Mr. Darby listed himself; his wife, Marjorie; his daughter, Joan; and his son, Patrick. (See attached Appendix No. 1.)
In June of 1980, Patrick, as the rider on a bicycle, was involved in an accident with an automobile. In October of 1980, Patrick *39 was involved in another accident when, while attempting to avoid a head-on collision, he swerved and struck two parked cars. SAFECO paid collision damages as a result of this second accident.
In January of 1981, Patrick was involved in a single-car accident when he lost control of his vehicle trying to avoid striking a dog. The vehicle went into a ditch, struck a culvert and caused property damages which were again paid by SAFECO.
After Patrick’s October, 1980 accident, SAFECO’s underwriting department sent an inquiry to the Agency questioning whether Patrick was frequently out at night driving during the early morning hours. After his January, 1981 accident, SAFECO determined that it would not renew the Darby policy because of Patrick’s propensity for accidents. On February 2, 1981, Jill Fuller, with SAFECO, wrote the Agency, advising that SAFECO would be unable to continue its coverage beyond the renewal date because of Patrick’s worsening driving record.
On April 15, 1981, SAFECO sent a letter to Mr. Darby advising that it would not be able to renew his coverage and enclosed a notice of non-renewal.
At this point the evidence begins to conflict as to what events transpired. Ms. Thomas, an employee of the Agency, testified that Mrs. Darby called her in reference to the cancellation notice which had been received from SAFECO. Ms. Thomas testified that Mrs. Darby wanted the Agency to know that her son no longer lived in their house, that he lived with his sister, and was working offshore. A telephone memorandum was presented into evidence reflecting a record of this telephone conversation with Mrs. Darby. (See attached Appendix No. 2.) Ms. Thomas further testified that Mrs. Darby said she would sign any necessary endorsement verifying the fact that Patrick no longer lived at home. Ms. Thomas then prepared the necessary endorsement and, on May 13, 1981, she went to Opelousas to obtain the Darbys’ signature at their place of business. Ms. Thomas testified that before Mr. Darby signed the May 13, 1981 endorsement, she went over the application completely with him to be sure that he understood everything, and he signed the endorsement in her presence. Ms. Thomas testified that both Mr. and Mrs. Darby clearly understood that absent the endorsement SAFECO would not maintain their coverage. (See attached Appendix No. 3.)
Mr. Maher, an underwriter with SAFE-CO, testified that he was the individual directly involved in the decision as to whether or not to continue coverage on the Darby policy. On May 18, 1981, SAFECO received the endorsement deleting Patrick from the policy and representing that he was no longer a member of the Darby household. After inquiry to the Agency, Mr. Maher was informed by Ms. Thomas that, according to the Darbys, Patrick was no longer a member of the household and was living at his sister’s and working offshore.
SAFECO then decided that renewal would be offered to the Darbys based on their good driving record because the only problem in the past had been the accidents involving Patrick and the claims loss payments resulting therefrom. Mr. Maher’s testimony was clear that had SAFECO known that Patrick was still a resident of the household, the Darby coverage would not have been renewed.
The evidence conflicts as to the Darbys’ understanding of the significance of the endorsement signed by Mr. Darby on May 13, 1981, deleting Patrick from the policy and stating that he was no longer a member of the household. Both Mr. and Mrs. Darby testified that they understood that SAFECO would not renew their policy as long as Patrick was allowed to drive any of their vehicles. As a result of this understanding, the Darbys no longer allowed Patrick to drive their vehicles. Shortly thereafter, the Darbys acquired liability auto insurance for Patrick from a company other than SAFECO and transferred the family vehicle which Patrick had been driving to Patrick by an act of donation. Both Darbys testified that it was not explained to them that SAFECO would not renew *40 their policy as long as Patrick was a member of the household.
Patrick testified that after his series of accidents, he was told by his parents that their insurance company was going to cancel them if he continued to drive their cars. He stated that in 1981, he did stay with his sister, Joan, when her roommate was offshore because Joan was uncomfortable about staying home alone. He testified that he has always lived with his mother and father.
The evidence is uncontroverted that, due to the representation in the endorsement form of May 13, 1981, stating that Patrick was deleted as a driver on the Darby policy and was no longer living at home, SAFECO renewed the Darby policy.
Finally, on March 3, 1983, nine months before Patrick’s accident of December 3, 1983, SAFECO forwarded a renewal questionnaire which Mr. Darby completed and signed, wherein he listed only Mr. and Mrs. Darby as licensed drivers in the household. (See attached Appendix No. 4.) Nowhere on this questionnaire was Patrick shown as a resident of the household with a driver’s license. At no time between May 13, 1981, the date on which Mr. Darby signed the endorsement stating that Patrick was no longer a member of the household, and December 3, 1983, the date of Patrick’s accident, was SAFECO ever advised that Patrick was, in fact, a resident of Mr. Darby’s household.
COVERAGE/MISREPRESENTATION
Assignments of error 1 and 2 are related and will be discussed together.
The jury found that neither Mr. nor Mrs. Darby materially misrepresented to SAFE-CO or its agent that Patrick Darby was not a member of the Edwin Darby household at the time the policy was renewed. The jury further found that, in fact, Patrick was a member of the Darby household on the date of the accident, December 3, 1983. Based on these findings, the jury further found that Patrick was covered on December 3, 1983, by valid uninsured motorist and medical payment insurance under a SAFECO policy.
La.R.S. 22:619 provides, in pertinent part:
“A. ...
no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.”
This Court was presented with the applicability of the above statute in Jamshidi v. Shelter Mut. Ins. Co., 471 So.2d 1141 (La.App. 3 Cir.1985), and stated, as follows:
“The jurisprudence interpreting this statute places the burden of proof upon the insurer. The statute provides that a false statement bars recovery only if the insurer proves it is made with the intent to deceive or if it materially affects the risk. However, Louisiana jurisprudence requires proof of both factors. Antill v. Time Ins. Co., 460 So.2d 677 (La.App. 1st Cir.1984); Coleman v. Occidental Life Ins. Co. of N.C., 418 So.2d 645 (La.1982).
[2] The difficulty of proving intent to deceive is recognized by the courts, thus the courts look to the surrounding circumstances indicating the insured’s knowledge of the falsity of the representation made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality. Henry v. State Farm Mut. Auto. Ins. Co., 465 So.2d 276 (La.App. 3rd Cir. *41 1985); Davis v. State Farm Mut. Auto. Ins. Co., 415 So.2d 501 (La.App. 1st Cir. 1982); Cousin v. Page, 372 So.2d 1231 (La.1979).” Id, at page 1143.
In this case, the evidence was uncontro-verted that Patrick Darby was a member of the Darby household. As such, barring the application of La.R.S. 22:619, the policy of insurance issued by SAFECO to the Darbys would have extended uninsured motorist and medical payments coverage to Patrick. The evidence is also uncontrovert-ed that SAFECO would not have renewed the Darby insurance policy had they known that Patrick remained a member of the household. Therefore, the remaining issue before us is whether the jury erred in finding that Mr. and Mrs. Darby did not materially misrepresent to SAFECO or its agent that Patrick was not a member of the Darby household, with an intent to deceive.
As recently stated by the Fourth Circuit in Viada v. Blue Cross of Louisiana, 524 So.2d 101, 104 (La.App. 4 Cir.1988):
“In order to show the applicant’s intent to deceive, strict proof of fraud is not required; rather, the intent can be determined from the surrounding circumstances indicating that the applicant knew his representations were false and recognized that they were material.”
The Darbys testified that Patrick had always been a member of their household. The questionnaire filled out and signed by Mr. Darby in 1978 lists both Patrick and their daughter, Joan, as household members with driver’s licenses. Notably, in 1978, Joan was listed as a household member with a driver’s license although this same questionnaire states that she used the insured vehicle 0% of the time. (See Appendix No. 1.) In the 1983 questionnaire the Darbys did not list Patrick as a household member with a driver's license (Appendix No. 4). Why? The questionnaire had not changed but the Darbys’ intent in completing the questionnaire had changed. They were well aware of the fact that SAFECO would cancel their insurance if it were known that Patrick was still living at home, regardless of whether or not he drove the insured vehicles.
The intent of the Darbys to deceive SAFECO and their recognition that this deception was material to their coverage with SAFECO may certainly be determined from the surrounding circumstances.
Upon review of the record, we find that the jury clearly erred in finding that the Darbys did not misrepresent material facts to SAFECO with the intent to deceive. The Darbys knew that SAFECO would cancel their insurance if Patrick were living at home and represented that Patrick no longer lived at home in order to retain their coverage.
PENALTIES AND ATTORNEY’S FEES
Insofar as we have found that the Dar-bys intentionally misrepresented to SAFE-CO that Patrick was no longer a member of their household and that this misrepresentation was material, further discussion regarding the propriety of an award of penalties and attorney’s fees is pretermitted.
DECREE
For the reasons assigned hereinabove, the judgment of the trial court in favor of Patrick Darby awarding damages, penalties, interest, and attorney’s fees is hereby reversed.
Costs of this appeal and at the trial level are assessed to Patrick Darby.
REVERSED.
*42 APPENDIX NO. 1
[[Image here]]
*43 APPENDIX NO. 2
[[Image here]]
*44 APPENDIX NO. 3
[[Image here]]
*45 [[Image here]]
APPENDIX NO. 4