545 So.2d 1022 (1989)
Patrick DARBY
v.
SAFECO INSURANCE COMPANY OF AMERICA.
No. 88-C-3087.
Supreme Court of Louisiana.
June 19, 1989.
*1023 Patrick C. Morrow, for applicant.
Larry P. Boudreaux, for defendant.
DIXON, Chief Justice.[*]
The issue in this personal injury case is whether Edwin and Marjorie Darby, parents of plaintiff Patrick Darby, intentionally misrepresented to Lucille Chautin, an agent for defendant Safeco Insurance Company of America, that Patrick was not a member of their household in order to prevent Safeco from canceling their insurance.
In the early morning hours of December 3, 1983, twenty year old Patrick Darby was a passenger in Randy Taylor's truck when Taylor lost control. The truck left the road and flipped over, seriously injuring Patrick and killing his cousin Dale Moreau. Darby settled with Randy Taylor's insurer for the liability and medical payments policy limits and then brought this action against Safeco, with whom Patrick's father, Edwin Darby, had an automobile insurance policy that included medical payments and uninsured motorist (UM) coverage. At the time of the accident, Patrick was living at home with his parents.
Safeco denied coverage on the basis of an intentionally deceptive material misrepresentation allegedly made by Patrick's parents, Edwin and Marjorie Darby, to its agent, Lucille Chautin, at the time the policy was renewed in May of 1981. Following a three day trial, the jury determined that Patrick Darby was covered by the UM and medical payments clauses in the policy issued to his parents by Safeco because neither parent had deceived Safeco by intentionally misrepresenting that their son Patrick was no longer a member of the household when the policy was renewed. The jury also found that Safeco had acted unreasonably and without probable cause in refusing to tender unconditionally its policy limits and awarded $1000.00 in attorney fees. Darby's total award of $100,000 was reduced by 15% to account for his own negligence.
Both parties filed post trial motions. Safeco sought a judgment notwithstanding the verdict, or, alternatively, a new trial. Darby filed for a judgment notwithstanding the verdict on the amount of attorney fees. The trial judge denied Safeco's motions but granted Darby's and increased the attorney fees awarded to $16,750.00.
Safeco took a suspensive appeal, which Darby answered. The court of appeal found clear error in the jury's determination that the Darbys had not misrepresented material facts to Safeco with the intent to deceive. The court determined that the Darbys knew that Safeco would not renew their policy as long as Patrick was a member of their household and that they had misrepresented Patrick's residence in order to retain their coverage. Darby v. Safeco Insurance Company of America, 533 So.2d 37 (La.App. 3rd Cir.1988).
Following denial of rehearing, Darby successfully sought writs from this court to review the decision of the court of appeal, contending that the court made factual findings inconsistent with the evidence and misapplied the manifest error standard by substituting its own evaluation of the evidence for that of the jury and the trial judge. Our review of the record in its *1024 entirety supports the jury's determination that Edwin and Marjorie Darby did not intentionally misrepresent to Safeco agent Lucille Chautin that their son Patrick no longer lived with them in order to prevent cancellation of their automobile insurance. Accordingly, we reverse.

FACTS
In late 1977, Michael Williams, an agent with the Dupre-Carrier-Godchaux Insurance Agency (the Agency) in Opelousas, Louisiana, accepted an application for automobile insurance from Arnaudville residents Edwin and Marjorie Darby. The Darbys were friends of his, and Williams noted in the application he forwarded to Safeco that he knew both had good driving records. Patrick Darby was fourteen at the time and not yet eligible for a driver's license.
Patrick turned fifteen in March, 1978, and Edwin Darby added him to the policy the following May. In August, the Darbys increased their liability coverage from the initial 10/20/10 limits for bodily injury and property damage to 100/300.[1] In September, Edwin Darby filled out an information form from Safeco in which he listed himself, his wife, his son Patrick, and his daughter Joan as drivers who were members of the household. The Darbys made several other changes to the policy during the ensuing years, including the removal of Joan as a member of the household and the adding and deleting of coverage for different automobiles. The Agency handled all these changes, initially through agent Michael Williams, and then through his successor, Lucille Chautin.
In June 1980, a motorist struck Patrick as he rode his bicycle. The motorist paid for damages to the bicycle. In October 1980, Patrick was blinded by the lights of an oncoming car and swerved into two parked cars as he attempted to avoid a head-on collision. Three months later, in January 1981, Patrick was again involved in an accident when he swerved to avoid a dog and struck a culvert. Both accidents resulted in significant property damages, which Safeco paid. Both accidents also occurred in the early morning hours.
Following the October 1980 accident, Safeco sought information from the Agency concerning whether Patrick was usually out during the early morning hours. Safeco had also received information on the June 1980 accident and questioned why Patrick had not reported it. The Agency reassured Safeco that Patrick was normally home by 11:30 p.m. and that Patrick had not intentionally failed to report the June 1980 accident: because he was riding his bicycle, he did not think he had to report it. After the January 1981 accident, however, Safeco decided that it would not renew the Darby's policy because of Patrick's worsening driving record. In February 1981, Safeco underwriter Pat Maher discussed the account with Lucille Chautin and told her that Safeco would renew the policy only if the Agency were to speak to Edwin Darby and Patrick concerning the two accidents and only if Patrick's driving record were to improve. Maher also indicated that Safeco would consider the value of the account to Chautin and to the Agency in deciding whether to renew the policy. In April, Safeco notified the Darbys that their policy would be canceled, effective May 24, 1981, because of Patrick's driving record.
Marjorie Darby, who handled the family's insurance matters, called Lucille Chautin when she received the notice of cancellation to ask what she could do to retain the insurance. The testimony of Marjorie Darby and Lucille Chautin conflicts concerning the arrangements that were made in order for the Darbys to keep their insurance with Safeco. Marjorie Darby stated that Lucille Chautin told her that she would "get a paper for her." Mrs. Darby *1025 testified that Lucille Chautin "gave me the understanding that all it [the `paper'] meant was that Patrick couldn't drive our vehicle anymore, so I told her if that was the case that I would take the insurance and that he would not drive our vehicle." Lucille Chautin, however, testified that Marjorie Darby told her that (1) Patrick no longer lived at home; (2) that he lived with his sister Joan; (3) that he had his own car; and (4) that he worked offshore. As evidence, Safeco presented a telephone memorandum dated May 7, 1981, on which Mrs. Chautin had written this information. The ambiguous memorandum also contained the notation "sign not to drive." (See appendix).
Lucille Chautin prepared an endorsement that deleted Patrick from the Darby's policy because he was no longer a member of the household. On May 13, 1981, she drove from Opelousas to the Darby's hamburger stand in Arnaudville to get Edwin Darby's signature. Both Edwin and Marjorie Darby testified that Lucille Chautin discussed the endorsement with them at this time and that they understood the endorsement meant that Safeco would renew their insurance if Patrick no longer drove their cars. Edwin Darby signed the endorsement. Lucille Chautin, however, testified that she went over the meaning of the endorsement with the Darbys, that Edwin Darby signed the endorsement in her presence, and that the Darbys knew that Patrick could not be a member of their household if they wanted to retain their insurance coverage with Safeco.
When Safeco received the endorsement, Pat Maher telephoned Lucille Chautin on May 22, 1981, to confirm that Patrick was no longer a member of the Darby household. Safeco then decided to renew the Darby's policy. Maher testified that had Safeco known that Patrick was still a member of the household, it would not have renewed the policy.
In July 1981, Edwin Darby donated a 1976 truck to his son so that Patrick would have transportation, and Marjorie Darby spoke to Lucille Chautin concerning insurance for Patrick on the truck. Mrs. Chautin secured coverage for Patrick with another insurance company. Patrick listed his address and telephone number on the application as being those of his parents and indicated on the application that he resided at that address during the work week. Mrs. Chautin was aware that the addresses were the same but testified that Mrs. Darby told her to send all notices concerning Patrick's insurance to her, since she handled the insurance for the family. When the post office later changed the Darby's route and box numbers and Marjorie Darby reported the change, the Agency changed the address information in Patrick's file as well. The Agency also obtained insurance for Patrick on a motorcycle that he purchased on August 26, 1983. Again, he listed his address and telephone number as being those of his parents.
In March 1983, Edwin Darby filled out a renewal questionnaire from Safeco. In 1978, Darby had listed himself, his wife, his son, and his daughter as licensed drivers residing in the household; this time he listed only himself and his wife. Although his daughter was no longer a member of the household at this time, Patrick was.
On December 3, 1983, Patrick Darby was seriously injured when the truck in which he was riding left the road and overturned. Safeco denied medical payments coverage and UM coverage based on the Darbys' allegedly intentional, deceptive misrepresentation that Patrick was not a member of their household when the insurance was renewed in 1981 and their subsequent failure to inform Safeco that Patrick lived with them.

MATERIAL MISREPRESENTATION WITH INTENT TO DECEIVE
Under the terms of R.S. 22:619A, which sets forth the conditions under which an insurer can avoid a liability insurance contract, an oral or written misrepresentation or warranty made by or on behalf of an insured in negotiating an insurance contract cannot be deemed material or void the contract unless made with the intent to deceive. Accordingly, there must be a finding of intent to deceive on the part of *1026 the insured in order to defeat coverage.[2]Cousin v. Page, 372 So.2d 1231, 1233 (La. 1979); DiGerolamo v. Liberty Mutual Insurance Co., 364 So.2d 939, 941 (La.1978).
The insurer claiming the defense of material misrepresentation in order to avoid coverage bears the burden of proving that the insured misrepresented a material fact and did so with the intent to deceive. Cousin v. Page, supra at 1233. Because of the difficulties inherent in proving that a person acted with the intent to deceive, the courts have lightened somewhat the insurer's burden by considering the surrounding circumstances in determining whether the insured knew that representations made to the insurer were false:
"Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." Id.
It is undisputed in this case that Patrick lived at home with his parents during the time period in question, and the evidence clearly shows that Safeco would not have renewed the Darby's policy had it known that Patrick remained a member of the Darby household. Thus, the issues are whether the Darbys made a material misrepresentation concerning Patrick's residence and, if so, whether they made it with the intent to deceive Safeco. In its answer to interrogatory number 2, the jury found that neither Edwin nor Marjorie Darby intentionally misrepresented to Safeco or its agent Lucille Chautin that Patrick Darby no longer lived with them. In reversing this finding, the court of appeal focused on Edwin Darby's failure to list Patrick as a member of his household when he completed a 1983 renewal questionnaire sent to him by Safeco. Since Darby had listed both Patrick and his daughter Joan on the 1978 renewal questionnaire, the court of appeal determined that the Darbys' intent in answering the questionnaire had changed because "they were well aware of the fact that SAFECO would cancel their insurance if it were known that Patrick was still living at home, regardless of whether or not he drove the insured vehicles." Darby v. Safeco, supra at 41. The question now before this court is whether the court of appeal erred in reversing the factual finding of the jury.
An appellate court should not disturb reasonable evaluations of credibility and reasonable inferences of fact made by a jury when the record as a whole reveals a reasonable basis for the finding in the trial court. See Virgil v. American Guaranty and Liability Insurance Co., 507 So.2d 825, 826 (La.1987) (Dennis, J. concurring); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). A review of this record discloses that the court of appeal erred in reversing the jury's finding that the Darbys did not intentionally misrepresent to Lucille Chautin that their son no longer lived at home in order to secure the renewal of their insurance with Safeco. The record in its entirety supports instead the jury's reasonable conclusion that the Darbys believed that Safeco would renew their *1027 insurance so long as Patrick did not drive their cars.
The record does contain conflicting evidence concerning what Lucille Chautin and Marjorie Darby discussed during the May 1981 telephone call. Chautin testified that Marjorie Darby told her that Patrick no longer lived at home. However, numerous witnesses, including Patrick and his sister Joan, with whom he sometimes spent the night, testified that he had always lived at home with his parents. Employment records from Tidewater Marine showed that Patrick did not begin to work offshore until February 1982. Patrick's 1981 tax return was consistent with testimony that he worked short periods for two construction companies during 1981. Also consistent with the plaintiff's position was testimony that Patrick, who was scheduled to graduate in May 1981, attended the final weeks of class during that spring term. Safeco contends that the testimony of Marjorie Darby that she did not represent to Lucille Chautin that her son no longer lived at home is self-serving when compared with the contemporaneous telephone notation Lucille Chautin made of the conversation. The uncontradicted testimony of several witnesses that Patrick had always lived at home and did not own a car or work offshore until late 1981 or early 1982 undercuts the persuasiveness of that telephone notation and supports Marjorie Darby's account of the conversation. The ambiguous memorandum also includes the notation "sign not to drive," a notation that could also be seen as supporting Mrs. Darby's position. Thus, whether Marjorie Darby told Lucille Chautin in May of 1981 that Patrick was working offshore and no longer living at home involves an evaluation by the jury of the credibility of both witnesses. In the face of conflicting testimony, "[t]his court accords great weight to the factual findings of the trier of fact ... and generally will not disturb reasonable evaluations of credibility and reasonable inferences of fact...." Chapman v. Belden Corp., 428 So.2d 396, 399 (La.1983). The jury was not clearly wrong in believing Mrs. Darby and in determining that the Darbys had made no misrepresentation.
The Darbys have contended throughout this litigation that their understanding was that Patrick could not drive their cars in order for them to retain their Safeco coverage. The transfer of the truck to Patrick by his father in July 1981 is consistent with this position. So too is the listing of Edwin and Marjorie Darby's address and telephone number on Patrick's subsequent insurance applications with the Agency. Thus, the Agency knew that the address of Patrick and his parents was the same. Under the well-settled terms of agency law, this knowledge is imputed to Safeco. Safeco's contention that the same address and telephone number listed on both policies was the result of Marjorie Darby's handling of Patrick's insurance business is insufficient to negate the other evidence presented.
Although Edwin Darby did sign an endorsement deleting Patrick from coverage under the policy because he no longer lived at home, it is significant that Lucille Chautin retained the insured's copy in the Agency's file. The Darbys thus had nothing in writing to indicate to them that their understanding that Patrick was not to drive the cars was incorrect. Indeed, the notice of nonrenewal sent to the Darbys by Safeco, dated April 15, 1981, specifies that the decision not to renew their insurance is "due to Patrick's accidents on October 11, 1980 and January 5, 1981 (where speed was a contributing factor)." Lucille Chautin admitted the Agency's file contained no documents stating that Safeco would not renew the Darbys' policy if Patrick were a member of the household, even though both Safeco and the Agency required documentation of such critical information. Since the record as a whole does not establish that the Darbys made any misrepresentations with the intent to deceive, such an intent cannot be inferred from individual items in the record. Consequently, the jury could have reasonably believed that Edwin Darby omitted Patrick's name from the 1983 renewal questionnaire because Patrick was no longer allowed to drive the cars covered by the policy, and not because Edwin Darby intended to deceive Safeco *1028 concerning his son's residence in order to renew the insurance.

PENALTIES AND ATTORNEY FEES
In its answer to interrogatory number two, the jury found that Safeco was unreasonable or acted without probable cause in refusing to tender unconditionally a reasonable amount to Patrick Darby and awarded plaintiff attorney fees of $1000.00. The trial judge later granted the plaintiff's motion for additur and raised the amount to $16,750.00. In reversing the judgment of the trial court in favor of the plaintiff, the court of appeal also reversed without discussion the finding that Safeco had acted unreasonably or without probable cause. In his appeal to this court, plaintiff now seeks the reinstatement of the trial court's award of attorney fees, as well as an award for additional fees incurred in the appellate process. The record demonstrates, however, that Safeco had legitimate doubts about the validity of its coverage of Patrick Darby. Accordingly, the court of appeal properly reversed the jury's award of attorney fees based on its finding that Safeco had acted unreasonably or without probable cause in refusing to tender medical payments and UM coverage.
It is important to view Safeco's behavior in refusing to tender its policy limits both in terms of the extent of its UM obligation and in terms of whether any coverage existed. Edwin and Marjorie Darby had originally contracted in 1977 for 10/20 liability coverage and 10/20 UM coverage. When the Darbys raised their liability coverage to 100/300, the declarations page of their policy continued to list 10/20 UM limits. After Safeco began its investigation of Patrick's December 1983 accident, documents in Safeco's internal file indicate that an adjuster, Earl Stigler, raised questions on April 5, 1984, concerning whether the 10/20 limits remained applicable. Stigler speculated on the extent of Safeco's UM obligation because the Agency did not have on file an election by Edwin Darby of limits lower than the 100/300 liability limits. Stigler also questioned whether the Darbys' addition and deletion of vehicles over the years had affected the UM coverage and wondered if Safeco could "still get away with the 10/20 limits?" Later Stigler theorized that Safeco should argue the 10/20 UM limits initially, "since this is our weakest defense," and then "go after Patrick'[s] not being an insured." Almost one year later, a memorandum from decision analyst Ronnie Black of Safeco's Dallas office questioned whether the Darbys' May 24, 1978 application and the August 8, 1978 endorsement raising the liability limits but leaving the UM coverage at 10/20 were sufficient under the law to constitute a proper rejection of the higher UM limits. Black attached cases received from Safeco's attorney discussing effective UM waivers and speculated that, based on his experience, Safeco had a 50/50 chance of prevailing on this issue in court. The memorandum suggested the need to depose the Darbys to document their testimony concerning the selection of UM limits prior to making any decision concerning the success of a motion for summary judgment on the issue. Black also noted that under the policy language, he believed that Patrick Darby would be covered as an omnibus insured, except for the question of whether the policy was void from the beginning because of the misstatements concerning Patrick's residence. Finally, Black also wondered whether Safeco had complied with the provisions of R.S. 22:658, the statute allowing assessment of attorney fees and penalties against the insurer if it arbitrarily, capriciously, or without probable cause fails to tender a reasonable amount within sixty days of demand. The memorandum concluded that "[i]t will be our argument that we're not in violation due to the questions of coverage, liability and damage that continue to confront us."
Mike Glasscock, Safeco's casualty claims supervisor for the State of Louisiana, testified that the extent of Safeco's UM exposure had been an issue from the beginning. Under cross-examination, however, Glasscock admitted that Safeco's file on the Darbys did not contain documentation showing that the Darbys had rejected UM coverage equal to the liability coverage *1029 when they raised their liability coverage from 10/20 to 100/300 in August 1978. Glasscock also testified that Safeco increased the loss reserve in March 1985 after he received Ronnie Black's memo suggesting that Patrick Darby was an omnibus insured under his father's policy, unless the Darbys had intentionally deceived the company concerning his residence, and speculating that Safeco had a 50/50 chance of having a court declare the UM limits were 100/300 rather than 10/20. Glasscock's testimony, when coupled with the documents from Safeco's file on the Darbys, strongly suggests that Safeco knew in 1985 that its exposure under the UM coverage would be equal to the Darbys' 100/300 liability limits.
The extent of the UM exposure, however, was not the only question with which Safeco was confronted. Had it been, the record would support the jury's finding that Safeco acted unreasonably and without probable cause in refusing to tender its limits. Safeco's principal question, however, concerned whether the policy afforded any coverage to the Darbys. Safeco had in its file a memorandum confirming a telephone conversation with Lucille Chautin in which she reported that Marjorie Darby told her that Patrick no longer lived at home. Safeco also had Edwin Darby's signature on an endorsement deleting coverage for Patrick because he no longer lived at home. The company knew through discovery that Patrick had never moved from the Darby household and that he had obtained insurance from a different company for the truck his father donated to him. Based on this information, Safeco's refusal to tender policy limits pending a legal decision on the question of whether an intentional misrepresentation had been made was not unreasonable or without probable cause. The jury's finding to the contrary was clearly wrong.

DECREE
Accordingly, the decision of the court of appeal that Marjorie and Edwin Darby made an intentional misrepresentation to Safeco is reversed. The decision of the court of appeal reversing the trial court's award of penalties and attorney fees is affirmed; the judgment of the district court is amended, and, as amended is affirmed at defendant's cost.
WATSON, J., concurs in part and dissents in part, assigning reasons.
COLE, J., dissents from that part of the majority opinion reversing the court of appeal and otherwise concurs.
*1030 *1031 WATSON, Justice, concurring in part and dissenting in part:
I concur in the holding that plaintiff is entitled to recover under his parents' underinsured motorist coverage. Safeco intended to delete Patrick as an omnibus insured because his accident record made him a poor liability risk. Since Patrick was injured as a guest passenger, his driving record was not material to Safeco's exposure.
I dissent from the failure to award penalties and attorney's fees, because the jury made a factual determination that the insurer was arbitrary and capricious in not paying the claim.
NOTES
[*] PIKE HALL, Jr., Associate Justice Ad Hoc, sitting for Associate Justice HARRY T. LEMMON.
[1] The Darbys originally had 10/20 uninsured motorist coverage. When they raised their liability limits, Safeco continued to charge them for 10/20 UM limits. The Agency, however, did not secure from the Darbys a proper written rejection of UM coverage equal to the liability coverage as required by law. As a result, the trial court determined that Safeco had exposure under the UM coverage equal to the increased liability limits. This issue is not disputed on appeal.
[2] Safeco contends that the jury did not comprehend that the UM and medical payments provisions the Darbys enjoyed under their family automobile insurance policy covered relatives living in their household as well. Safeco's renewal of the Darbys' policy did indeed increase Safeco's risk exposure because of Patrick's residence. The Darbys received the benefit of lower rates as well because Safeco thought it was no longer insuring a household in which a young driver resided.

R.S. 22:619(B), which was discussed in the court of appeal opinion and briefly in the arguments of the parties, allows an insurer to avoid coverage if the applicant for life or health and accident insurance made a false statement with actual intent to deceive and that statement materially affected the acceptance of the risk or the hazard assumed by the insurer. See Gay v. United Benefit Life Insurance Co., 233 La. 226, 96 So.2d 497 (1957). The statute, by its own terms, is inapplicable to liability policies. Accordingly, any arguments concerning Safeco's increased risk are irrelevant except in determining whether the alleged misrepresentation was material. Safeco can avoid the medical payments and UM coverage due to Patrick under the Darbys' policy only by proving that a material misrepresentation was made and that it was made with the intent to deceive.