832 So.2d 1209 (2002)
John M. GIBSON
v.
ALLSTATE INSURANCE COMPANY.
No. 02-0892.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
*1210 William Howard Goforth, Lafayette, LA, for Plaintiff/Appellee, John M. Gibson.
David Chalavon Forrester, Forrester, Jordan & Dick, L.L.C., Baton Rouge, LA, for Defendant/Appellant, Allstate Insurance Company.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD and MARC T. AMY, Judges.
*1211 AMY, Judge.
The plaintiff brought an action against his homeowner's insurer to recover losses from an alleged burglary. The trial court awarded the plaintiff damages in the amount of $15,226.94 for his loss in the burglary, together with $1,500 as penalties, and $4,503.42 in attorney's fees. The defendant appealed, and the plaintiff answered seeking additional attorney's fees. For the following reasons, we affirm and award additional attorney's fees for work performed on appeal.

Factual and Procedural Background
This case arises out of an alleged burglary on June 1, 2000, in Rayne, Louisiana. The plaintiff, John Gibson, testified that he and his family were away from their home between the hours of 9:30 or 10:00 p.m. until shortly after midnight. When the plaintiff and his family returned, the plaintiff's oldest son noticed glass on the ground, and the plaintiff testified that he subsequently noticed that the glass on the side door of his home was shattered. Thereafter, the plaintiff and his family left the home and went to the Rayne Police Department. The plaintiff testified that, upon returning to the home with the police, he found the window in the side door damaged, two windows in his bedroom damaged, the bedroom ransacked, and many items from his home missing. The Rayne Police Department took pictures at the scene, and these pictures were admitted into evidence. There is no indication, however, that the Rayne Police Department conducted any follow-up investigation.
On July 3, 2000, the plaintiff made a claim with his homeowner's insurer, Allstate Insurance Company. The claim was initially handled by Allen Beasley. However, Officer Carroll Stelly of the Rayne Police Department testified that he contacted Mr. Beasley and stated that the circumstances surrounding the burglary were suspicious. Specifically, Officer Stelly told Mr. Beasley that he suspected that the burglary was staged. As a result, the plaintiff's claim was transferred and assigned to an Allstate special investigator in Arkansas, Mack Hicks.
Mr. Hicks testified that he opened the file on July 26, 2002. On July 27, 2002, Mr. Hicks took the plaintiff's statement by telephone. Notably, this is the only statement that was recorded by Mr. Hicks. Mr. Hicks also requested that the plaintiff produce more proof of ownership of a few of the things that were claimed to be stolen. On July 28, 2002, Mr. Hicks phoned the Rayne Police Department hoping to speak to Officer Stelly. However, Mr. Hicks was only able to speak to an unnamed dispatcher. Nevertheless, Mr. Hicks eventually interviewed Officer Stelly by telephone on August 9, 2002. Although the plaintiff's claim was denied because Allstate believed the plaintiff falsified the burglary, Mr. Hicks sent a letter to the plaintiff on August 30 informing him that his claim was denied because he failed to provide sufficient proof of ownership. Allstate never canceled the plaintiff's policy or told the plaintiff that it believed that he staged the burglary. The plaintiff brought the instant action to recover his alleged losses.
After a trial on the merits, the trial court found that it was more probable than not that a burglary did occur. Further, the trial court found that the plaintiff provided sufficient proof that he owned the items which were claimed to have been stolen. The trial court additionally found that Allstate failed to act in good faith when dealing with the plaintiff. Consequently, *1212 the trial court rendered judgment in favor of the plaintiff in the amount of $15,226.94 for his loss in the burglary, together with $1,500.00 as penalties, and $4,503.42 in attorneys' fees. Allstate now appeals raising the following assignments of error:
I. The trial court erred in finding that Mr. Gibson's story about that alleged burglary and his acquisition of the recording equipment were not knowing misrepresentations of material fact;
II. The trial court erred in finding that a burglary occurred at the plaintiff's dwelling; and,
III. The trial court erred in finding that Allstate violated La.R.S. 22:658 and in awarding plaintiff penalties and attorney's fees under that statute.

Discussion
Testimony of Mr. Gibson and the Burglary
Raising several arguments in support of these assignments of error, Allstate generally contends that the trial court's conclusion that it was more probable than not that a burglary did occur is clearly erroneous. Allstate asserts that Mr. Gibson gave incredible, contradictory statements and testimony. Further, Allstate contends that Mr. Gibson made misrepresentations of material fact. In turn, Allstate argues that the trial court's reliance on Mr. Gibson's testimony was misplaced and led to an erroneous conclusion. We find that Allstate's argument lacks merit.
In its written reasons for ruling, the trial court explained:
It is more probable than not that the burglary did occur. The facts at the scene are consistent with a burglary, with the possible exception of a lack of mud in the bedroom (if you believe Officer Stelly's recollection to be correct) and even that is suspect. I reviewed the pictures and did not find the lawn to be freshly mowed. In fact the grass was rather long. Furthermore, wet yards do not yield muddy footprints if there is a sufficiently thick lawn.
Officer Stelly testified, after reviewing the pictures in evidence, that he believes the side door and one window were broken from the outside. The other he believes was broken from the inside. (Hicks' notes say Stelly couldn't tell.) This seems consistent with a break-in, and no evidence suggested the second window was not the most convenient place to off-load the items stolen, particularly since the stolen computer was located directly in front of that window.
Finally, I find Mr. Gibson's testimony to be credible. He was confident and unwavering, and no credible evidence was presented that he was being anything but truthful. The Court does not believe he would be so devious as to fabricate a burglary and thereafter close his bank account (checks were stolen), remove the alarm system because he believed it was flawed and add burglar bars to the home in an effort to make his story more believable.
. . . .
Has Gibson provided sufficient proof that he owned the items he claims were stolen?
The Court concluded he has. Except for being unable to find some sellers, there was no other evidence to suggest otherwise. I find little probative value in the fact that Gibson claims that he did *1213 not retain e-mail addresses anywhere but his computer. (Neither does this Trial Judge). And while it may be risky to do business with money orders, it seems to have worked for Gibson when buying items on the Internet.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993). Further, in Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989), the Louisiana Supreme Court stated:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finders's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
(Citations omitted.)
Although Allstate provides several interpretations of the testimony and evidence, the trial court's interpretations of the testimony and evidence are reasonable. The trial court's written reasons for ruling provide that the trial court found that Mr. Gibson was credible; and, we do not find Mr. Gibson's testimony inconsistent or implausible on its face such that a reasonable fact finder could not credit his testimony. On the other hand, the trial court found that Officer Stelly's testimony was suspect. Accordingly, in light of Rosell, the trial court's finding that it is more probable than not that the burglary did occur is not manifestly erroneous or clearly wrong.
Penalties and Attorney's Fees
In its brief, Allstate argues that the trial court erred in finding that it was arbitrary, capricious or without probable cause in its denial to pay Mr. Gibson's claim because Allstate asserts that it had a reasonable basis to suspect fraud. As a result, Allstate argues that the trial court's ruling assessing penalties and attorney's fees should be reversed. We find that Allstate's argument lacks merit.
In its written reasons for ruling, the trial court stated:
Apparently, the extent of Mr. Hicks' investigation was to speak by telephone with a person or persons with the Rayne Police Department and take a taped statement of Gibson by telephone. No other recorded statements were taken or interviews conducted. In fact, nothing else was done. A review of Gibson's recorded statement provides no evidence the burglary was staged.
Thereafter, Allstate, through Hicks, informed Gibson his claim was being denied because of a lack of proof of ownership submitted by him (Gibson). He was not notified that it believed the burglary was staged.
. . . .
Not only did Allstate not respond within 30 days, it clearly misrepresented *1214 its position to Gibson in its Aug. 30, 2000 letter. (Unless, of course, its position has changedin which case this would be a strong indication of bad faith on its part. See La. Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, et al, 616 So.2d 1250 (La. 1993).)
The Court is troubled most by the lack of effort by Allstate to thoroughly investigate the claim. It was happy to write the policy and, presumably, believed Gibson and his family were a good risk, yet it seemed to deny the claim before making an honest effort to determine its validity. It did no more than speak with the Rayne Police Department by telephone and later, receive its file (what little there is). Even an untrained investigator (which Mr. Hicks is not) would see that the Rayne Police Department did no investigation at all. And the hearsay opinion of a "dispatcher" can hardly be helpful in evaluating the claim. Allstate forwarded the case to an out-of-state investigator who made a few phone calls. No real effort was made to determine if the items claimed stolen existed until after the claim was denied. Gibson was misled (presumably) with respect to why the claim was rejected. At the very least, it failed to act in good faith. It has spent far more time and effort to defeat the claim than it ever did investigating it in the first place.
A trial court may award penalties and attorney's fees against insurers under La. R.S. 22:658 or 22:1220. First, La.R.S. 22:658 provides:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any other party in interest.
. . . .
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
. . . .
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any said employees, together with all reasonable attorney fees from the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
*1215 . . . .
Second, La.R.S. 22:1220 provides:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
. . . .
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
Addressing these statutes, the Louisiana Supreme Court stated:
The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding which may not be disturbed unless manifestly erroneous. Brinston v. Automotive Cas. Ins. Co., 96-1982 (La.App. 4 Cir. 12/3/97), 703 So.2d 813, 816; Marcel v. Allstate Ins. Co., 536 So.2d 632 (La.App. 1 Cir.1988), writ denied, 539 So.2d 631 (La. 1989). We have described an insurer's action as "arbitrary and capricious" when its willful refusal of a claim is not based on a good faith defense, Louisiana Maintenance Servs., Inc. v. Certain Underwriter's at Lloyd's of London, 616 So.2d 1250, 1253 (La.1993), or is unreasonable without probable cause, Darby v. Safeco Ins. Co., 545 So.2d 1022, 1029 (La.1989). However, where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties. Darby, supra.

Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, p. 5 (La.1/19/00); 753 So.2d 170, 173. Recognizing the relationship between La.R.S. 22:658 and La.R.S. 22:1220, the Louisiana Supreme Court also stated:
We have previously recognized the close relationship between the conduct prohibited in La. R.S. 22:658, subd. A(1) and the conduct prohibited in La. R.S. 22:1220, subd. B(5). Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97); 694 So.2d 184, 192, n. 14. In fact, the conduct prohibited is virtually identical, i.e., failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious or without probable cause. The primary difference is that under La. R.S. 22:658, subd. A(1), the insurer must pay the claim within 30 *1216 days of receiving satisfactory proof of loss, rather than the longer 60-day period allowed under La. R.S. 22:1220, subd. B(5).
Id. at pp. 6-7; 174. A panel of this court has interpreted La.R.S. 22:658 "to require that the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." McClendon v. Economy Fire & Cas. Ins. Co., 98-1537, p. 7 (La.App. 3 Cir. 4/7/99); 732 So.2d 727, 731. Thus, if an insurer has questions regarding the validity of a claim, the insurer must nevertheless investigate that claim within the statutory period. See Id.
Mr. Hicks testified that his entire investigation was done through phone calls made from Arkansas. Mr. Hicks never visited Rayne, Louisiana or met with Mr. Gibson in person. Furthermore, no agent of Allstate inspected Mr. Gibson's home or met with Mr. Gibson in person. Mr. Hicks primarily relied on his telephone conversations with members of the Rayne Police Department. However, the investigation file indicates that the Rayne Police Department conducted little initial investigation and no follow-up investigation.
When he spoke to Mr. Gibson on the telephone, Mr. Hicks stated that he requested that Mr. Gibson provide more proof of ownership and that Mr. Gibson complied. Notably, Mr. Hicks admitted at trial that Mr. Gibson provided sufficient proof of ownership of the claimed items. But, Mr. Hicks mailed a letter to Mr. Gibson providing Allstate was declining payment because Mr. Gibson failed to provide documentation to verify the loss or sufficient proof of ownership. Due to the fact that Mr. Gibson's claim was denied because Allstate suspected that Mr. Gibson falsified the burglary claim, Mr. Hicks also admitted that this letter was misleading.
Mr. Gibson testified that he was never told by Allstate that it suspected that the burglary was staged until he brought this action against Allstate. In addition, Mr. Gibson stated that he telephoned Allstate to inquire about his claim, but he was told by Allstate that everything was fine. Mr. Gibson also testified that, although his policy with Allstate contained a cancellation clause for misrepresentation, Allstate never canceled his policy and accepted premiums until Mr. Gibson canceled the policy himself.
Initially, we note that, due to the trial court's findings, penalties could have been arguably assessed pursuant to La.R.S. 22:1220. However, it appears from the trial court's discussion and the amounts awarded that the penalties were assessed according to La.R.S. 22:658. In light of the evidence, we conclude that the trial court's determination to assess penalties and attorney's fees is not clearly wrong or manifestly erroneous under the particular facts of this case.
Attorney's Fees on the Appeal
Mr. Gibson's counsel has answered the appeal seeking an increase in the award of attorney's fees for work done on this appeal. The trial court awarded $4,503.42 in attorney's fees for work performed in the prosecution of this case in the court below. See La.R.S. 22:658. When an award of attorney's fees, pursuant to La.R.S. 22:658, is affirmed, the appellate court may award additional attorney's fees for work done on appeal, provided that the plaintiff has requested the increase through proper appellate procedure. See Hayes v. Allstate Ins. Co., 99-1558 (La.App. 3 Cir. 3/1/00); *1217 758 So.2d 900, writ denied, 00-1597 (La.8/31/00); 766 So.2d 1280; La.Code Civ.P. art 2133. Accordingly, we award additional attorney's fees in the amount of $2,500.00 against Allstate for work done on this appeal.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. An additional $2,500.00 in attorney's fees is awarded against the defendant, Allstate Insurance Company, for work done on this appeal. All costs of this appeal are assigned to the defendant, Allstate Insurance Company.
AFFIRMED; ADDITIONAL ATTORNEY'S FEES AWARDED.