702 So.2d 960 (1997)
Gray Scott MANN
v.
ZURICH INSURANCE COMPANY a/k/a Zurich American Insurance Group, Michael Singer, Landis and Gyr Powers, Inc., Alamo Rent-A-Car, Inc., Old Republic Insurance Company, The Buick Motor Company, The General Motors Corporation, Allstate Insurance Company, and Julie M. Hebert.
No. 97-CA-429.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 1997.
Rehearing Denied December 17, 1997.
A. Remy Fransen, Jr., New Orleans, for Appellant Gray Scott Mann.
Ronald L. Faia, Jr., New Orleans, for Appellee Allstate Insurance Company.
Thomas L. Gaudry, Jr., John M. Crosby, Gretna, for Appellees Michael Singer and Zurich Insurance Company.
Before GOTHARD, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Plaintiff, Gray Scott Mann (Mann), appeals from a judgment in favor of defendants, Michael Singer (Singer) and Zurich Insurance *961 Co. (Zurich), holding that Singer was not the proximate cause of Mann's injuries. For the reasons which follow, we affirm.
On October 17, 1990, Mann was the front seat guest passenger in a Buick Skylark, driven by Julie Hebert (Hebert). He was rear-ended by a Ford truck, whose driver was Singer and whose guest passenger was Gary Grashoff (Grashoff). The Skylark was traveling west in the middle lane of Interstate 10 near the Williams Boulevard exit in Jefferson Parish when it was struck from the rear by the Ford truck. Hebert was insured by Allstate Insurance Company (Allstate) and the Skylark, rented from Alamo Rent-A-Car (Alamo), was insured by Old Republic Insurance Company (Old Republic). Singer was in the coarse and scope of his employment with Landis & Gyr Powers, Inc. at the time of the accident and, therefore, insured by Zurich.
On October 17, 1991, suit was filed by Mann against various defendants.[1] Singer and Zurich filed a counter claim against Hebert and Allstate. An intervention was filed by Tulane University Medical Center Clinic (Tulane) for certain unpaid medical bills incurred by Mann. Trial on the merits took place before a jury on October 21 through 25, 1996. A verdict in the form of interrogatories was answered by the jury. The jury found that Singer was negligent and that his negligence was the sole proximate cause of the accident, assigning him 100% of the fault for the accident. However, the jury also found that the negligence of Singer was not the proximate cause of any injury to Mann and awarded no damages. Judgment was signed on October 31, 1996 in accord with the jury verdict, dismissing Mann's case, dismissing the cross claim by Singer against Allstate and awarding judgment in favor of Tulane against Mann in the sum of $1,673.15. It is from this judgment that Mann appeals. Defendants have answered the appeal.
On appeal, Mann does not dispute the jury finding that Singer's negligence was the sole cause of the rear-end collision with the vehicle in which he was a passenger. Rather, the main thrust of Mann's arguments on appeal is that the jury finding was clearly wrong or manifestly erroneous in concluding that Singer's negligence was not the cause of Mann's injuries.
In Singer's answer to the appeal, his primary argument is that the jury was not clearly wrong in finding that any negligence on the part of Singer did not cause Mann's injuries. It is argued that the jury finding is well supported by the record and the judgment should be affirmed. In the alternative, Singer argues that, if the appellate court concludes that the jury was clearly wrong in finding no causation between the accident and Mann's injuries, then the court should go further and find that the jury was also clearly wrong in assessing 100% of the fault against Singer and none against Hebert, his driver.[2]
The appellate standard of review on factual questions is well settled. On appellate review of a factual determination, the reviewing court may not set aside the factfinder's findings of fact in the absence of manifest error or unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring, 283 So.2d 716 (La.1973). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing *962 court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. However, a proper review of the record cannot be completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court. There must be a further determination that the factfinder's conclusion is reasonable in light of the entire record. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220.
Mann contends that he injured his left knee, back and neck in the accident. He underwent orthoscopic surgery on his left knee on July 9, 1993, confirming the diagnosis that he suffered from a torn lateral meniscus. He testified that his knee smashed into the dashboard of the car and that he was thrown backward and then forward, injuring his back and neck. He stated that the impact was very forceful. Hebert testified by deposition that she was thrown into the steering wheel by the impact. Danielle Grusich (Grusich), a backseat passenger stated that she was thrown across the back seat. Mann stated that he did not seek immediate medical attention because of his concern for Hebert, who was taken from the scene of the accident by an ambulance. He and Grusich followed the ambulance to the hospital and they stayed with Hebert.
Approximately one week later, on October 24, 1990, with continuing pain, Mann first sought medical attention from Dr. Stewart Altaian. Upon examining him, Dr. Altaian noted spasm in the cervical spine, in the neck area and in the lumbosacral area. The range of motion of the neck and back were about 50%. Tenderness was noted in the left knee but the range of motion was normal with reported pain. Dr. Altman diagnosed Mann with a neck sprain and referred him to an orthopedist based on the history of the knee injury. Mann returned to Dr. Altman on November 11, 1990 complaining of neck and shoulder pain, but made no complaints on that date regarding the left knee. Mann continued to see Dr. Altman once or twice a month through August of 1991. His condition fluctuated over that period, often with complaints of pain in the neck and back and sometimes down the arm. Sometimes the doctor noted muscle spasm and sometimes he did not. On May 15, 1991, an MRI was taken of the neck, back and left knee. The radiologist report noted a possible disc herniation at C3-4 and C7-T1 and possible abnormality of the meniscus. Mann only saw Dr. Altman once in 1992. He returned to Dr. Altman in April of 1993 with complaints of pain in the neck, back and knee.
On cross examination of Dr. Altman, it was brought out that Mann was referred to him by an attorney. In giving Dr. Altman his medical history, Mann had neglected to inform him of a slip and fall accident which he had in 1989, in which he reportedly injured his left knee, neck and back. It was noted that throughout Mann's visits with Dr. Altman, there was no clinical indication of any cord compression or knee injury evident by the tests which Dr. Altman performed on him. He had full range of motion in his left leg although it was reportedly with pain. Prior to his return to Dr. Altman in 1993, Mann's last complaint of left knee pain was in June of 1991, despite at least 4 following visits. It was also brought out on cross examination that Dr. Altman did not find the MRI report significant enough to change his treatment of Mann, still believing that he had a soft tissue injury.
On August 1, 1991, Mann saw an orthopedic surgeon, Dr. Zeringue about his injuries. He complained to Dr. Zeringue of pain in his neck, back, elbow and both knees. After testing and reviewing the previous MRI reports, Dr. Zeringue concluded that Mann's injuries were sprains or strains and that conservative treatment with medication was in order. Dr. Zeringue saw Mann regularly, once a month or every other month, from August of 1991 until March of 1993.
On cross examination, Dr. Zeringue stated that Mann did not tell him of the previous slip and fall injury to his neck, back and knee. He also stated that in his tests on Mann there were no clinical indications of a *963 herniated disc or of a meniscus tear. He also stated that a July of 1991 MRI did not show evidence of a ruptured disc and the radiologist had reported, as to the knee, that he was "inclined to doubt that this represents an actual meniscus tear."
On March 17,1993, over two years following the accident, Mann consulted with Dr. Michael Brunet, who specializes in sports medicine and particularly knee joint injuries. After examining Mann and reviewing the MRI, Dr. Brunet suspected that Mann had a torn meniscus. This diagnosis was confirmed when he subsequently performed surgery on Mann's knee. It is undisputed that Mann had a meniscus tear at the time Dr. Brunet operated on him. The question at trial was whether or not it was caused by the October of 1990 auto accident.
On cross examination, Dr. Brunet acknowledged that the mechanics of a tear in the lateral meniscus usually involves some kind of twisting or rotation of the knee and is not generally caused by blunt trauma, although he stated that it was possible. He also stated that he would have expected Mann to have had persistent soreness and pain if he had torn the meniscus in the accident or if it had been torn in the 1989 slip and fall. He also stated that he would have expected some loss of motion but full range of motion with pain was consistent with a meniscus tear. Dr. Brunet stated that the meniscus tear injury is often seen in athletes. Mann was approximately six feet tall, weighed about 300 pounds and had played football in college.
Mann presented the testimony of Dr. April, a radiology specialist, who reviewed all the MRIs and x-rays and concluded that Mann's back pain symptoms were similarly caused in 1991 and in 1996. He noted that there was some degeneration in the L4-5 range, but that there was not similar degeneration in other parts of the back. Therefore, he concluded that the degeneration at that location had been injury induced. Dr. April opined that Mann's back condition was either caused or aggravated by the car accident.
Mann testified at trial that on June 6, 1989, he had slipped and fallen in the lobby of an office building and injured his left knee, back and neck. He consulted Dr. Gordillo for those injuries and was treated for about six months. Dr. Gordillo, stated that he had released Mann as symptom free in December of 1989. However, it came out in other testimony that Mann had been seeing a chiropractor in the months between his release from Dr. Gordillo and the car accident in October of 1990. Mann stated that this was only necessary when he played ball.
Dr. Robert Steiner testified for the defense. He examined Mann on two occasions following the surgery by Dr. Brunet. Dr. Steiner testified that Mann did not inform him of the prior slip and fall injury to his back and knee. Dr. Steiner testified that on the first occasion which he saw Mann, he found no cervical or lumbar spasms. Dr. Steiner found no indications of a ruptured or herniated disc or nerve root impingement or cord compression. He did state that he saw degenerative changes in Mann's x-rays due to the aging process. Finally, he testified that Mann did not have a traumatically induced fracture of the end plate, but rather, that Mann had Schmorl's nodes, a developmental condition, happening over time, where some of the disc material works its way up into the vertebral body or bone. It is common in slip and fall accidents. This condition was apparent in the 1991, 1994 and 1996 x-rays. Dr. Steiner also testified that a person with a meniscal tear will show a positive McMurray sign. Neither Dr. Altman or Dr. V.J. Zeringue noted a positive McMurray sign in their examination of Mann. Dr. Bruce Razza found full range of motion, but with reported pain.
Singer and Grashoff both testified that there was very little, if any, impact with the Mann vehicle. The defense introduced into evidence photographs of the two vehicles in which no damage to either vehicle was evident. Both Singer and Grashoff testified that they looked at the two vehicles at the time of the accident and saw no damage to either. The occupants of the vehicle in which Mann was riding all stated that they did not look at the vehicles at the time of the accident to check for damage. The investigating police officer had noted on his report slight *964 damage, although he could not recall the incident.
Grusich, stated in her deposition testimony that the impact in the accident was slight, but in court she indicated that it was more serious. Also, in her deposition testimony from a slip and fall lawsuit that she was pursuing, she stated, on October 16, 1991, a year after the car accident herein, that she was unable to do many of her regular household chores and gardening (because of the slip and fall injuries) and that her boyfriend Mann had to do them for her. This seemed to evidence Mann's lack of any disability. Also in Mann's 1991 deposition for his slip and fall case, he stated that he was feeling "pretty good" but that he would wake up in the morning with aches and pains and could not say whether that was attributable to age or "this accident." At trial he explained that he was referring to the car accident and not the slip and fall accident. The entire deposition was admitted into evidence for the jury to decide to which accident he was referring.
Defendants also called Timothy Cummings, a private investigator who had made a video tape of Mann's activities, which differed from Mann's reported limitations.
After reviewing the entire record, it is clear to us that credibility was a serious concern of the jury in this case. The jury was first called on to determine whether there was any impact or the severity of the impact at the time of the accident. Mann and the occupants of the automobile in which he was riding said there was a strong impact. Singer and Grashoff said that there was no impact or very little.
The jury found that there was an impact. The photographs evidence no damage to either vehicle. The jury next considered the alleged injuries of Mann. Mann's medical injuries, until Dr. Brunet found the meniscal tear three years following the accident, primarily consisted of Mann's subjective reports of pain and his testimony that he was pain free prior to the car accident. The jury was informed of Mann's 1989 slip and fall accident in which he injured his same bodily areas. They were told that he did not report this prior accident and injuries to any of the treating physicians involved in this case. They heard Grusich's 1991 deposition in her slip and fall case in which she stated that Mann was doing household and gardening chores for her which she is incapable of doing. And, a video cast doubt on Mann's continued disability. The jury was definitely faced with a credibility determination, which they made against Mann, finding that the negligence of Singer in causing the traffic accident did not cause his injuries. As this court has held, a jury can adequately assess the credibility of witnesses and it is the jury's exclusive province to do so. Sicearelli v. State Farm Fire & Casualty Company, 556 So.2d 179 (La.App. 5th Cir.1990). When a factfinder's decision is based on crediting the testimony of one or more witnesses, instead of others, that finding can almost never be clearly wrong or manifestly erroneous. Alello v. Smith, 94-103 (La.App. 5th Cir. 7/26/94), 641 So.2d 664, writ denied, 94-2231 (La.11/18/94), 646 So.2d 382.
In this case, we find that there was a conflict in the evidence on several key points and that the jury made evaluations of credibility and inferences of fact which were reasonably based on the record as a whole. We find no manifest error in their findings.
Accordingly, we find that the jury determination that the negligence of Singer was not a proximate cause of the injuries to Mann is reasonable, based on the record as a whole and, therefore, affirm the trial court judgment dismissing plaintiff's case against defendant, dismissing defendant's cross claim against Allstate, and rendering judgment in favor of Tulane against Mann. Costs of appeal are assessed against Mann.
JUDGMENT AFFIRMED.
NOTES
[1] Prior to trial, a settlement was reached with defendants General Motors Corporation, Old Republic and Alamo. Hebert and Allstate were dismissed voluntarily from the suit by Mann.
[2] There was a factual dispute at trial concerning whether Hebert, the driver of the vehicle in which Mann was riding, was also negligent in contributing to the cause of the accident. Singer and Grashoff testified that the Hebert vehicle stopped in the middle lane of traffic on the Interstate Highway for no apparent reason except maybe to get into the right lane, which was backed up, to exit at Williams Boulevard. Thus, her negligent act contributed to the accident. Mann alleged that Hebert stopped because there was traffic in front of her that was also stopping and that her actions were prudent under the circumstances. The jury apparently resolved this factual dispute in favor of Mann, finding that Singer was 100% at fault in causing the accident.