1BOWES, Judge.
Plaintiff, Rose Marie Falcone, filed this suit for damages for personal injury, alleging that a branch from a fallen tree in the backyard of her rented residence had fallen on her. Named as defendants in the suit were Camille Trapani, owner of the property, and Lafayette Insurance Company, who issued a policy of insurance to Ms. Trapani which covered the property. Trial by jury was had and the jury found an accident had not occurred and that Ms. Falcone had not suffered injury. As a result, the trial court rendered judgment dismissing Ms. Falcone’s suit, with prejudice. Plaintiff filed motions for judgment notwithstanding the verdict and ^alternative new trial; these motions were denied by the trial court. This appeal ensued. For the following reasons, we affirm.

FACTS

In May of 1992, plaintiff leased a house from defendant Camille Trapani. Plaintiff and her fiance of 17 years were living in the house in August of 1992. At that time, plaintiff had three cats, who were “indoor” eats. Plaintiff testified that she considered these cats her “babies.” At trial, the lease between Mrs. Trapani and plaintiff was introduced into evidence. It reflects that there was a “no pets” clause. Plaintiff testified that she discussed pets with the landlord, and the landlord said that this clause referred to dogs and that she did not have a problem with cats. Contrary to this, Mrs. Trapani testified that there was no discussion about pets and that this clause referred to all pets.
On August 12,1992, a large tree located in the backyard of the house fell after being struck by lightning. Plaintiff was out of town at that time and her fiance reported the fallen tree to the owner, Mrs. Trapani, who promptly notified her insurer. Plaintiff returned home the next day and went into the backyard to view the tree. She noted that the tree was stretched across the yard and on the roof of the house. In her depositions, she reported the sight as “awesome.”
On August 17, 1992, one of plaintiff’s cats, a kitten named Playgirl, ran out of the house. Plaintiff went out into the backyard to retrieve her. LShe crouched down and was looking under the house for the kitten. She stated that at the time, she was very worried about her kitten, and “oblivious” to anything else, including the fact that the tree was in the yard. She stated that she was not positioned under the fallen tree, but that the tree was to her right. A tree branch fell off the tree and landed on her back, forcing her to the ground. She testified that she felt like she was “tackled.” Plaintiff further testified that she lost consciousness when the tree branch hit her and when she recovered her consciousness, her daughter and fiance were present. Her daughter told her that they had called 911, but no one lifted the tree branch off her back.[1]
At the trial, plaintiff testified that the tree branch was a log “thirtysome odd” inches in diameter. The paramedic at the scene testified that when he arrived, the plaintiff was *1185 lying on the ground with a branch that was six inches in diameter across her back. ' Although several pictures of the fallen tree were introduced into evidence, there was no picture of the log which plaintiff alleges fell on her placed in evidence.
Elvis Smith, employed by East Jefferson General Hospital, was the paramedic who responded to the 911 call. When he arrived, he saw the plaintiff lying on the ground with a tree branch across her back. She complained of a headache, and back and neck pain where the tree branch had struck her. He also observed abrasions to her back. Because she | complained of back pain, she was immobilized for transport to the hospital. The plaintiff was conscious and alert, and she did not say anything to him about having lost consciousness.
The medical record of plaintiffs treatment in the emergency room at East Jefferson General Hospital was introduced into evidence. It reflects that plaintiff reported an “unknown amt. of time of loss of consciousness at time of insult.” X-rays taken revealed no abnormality of lumbar or cervical spine (including C5-6 level), other than degenerative changes; however, there was a compression fracture of the upper thoracic vertebral (dorsal) spine. The doctor prescribed to the plaintiff home bed rest with ice packs for 48 hours, then heat treatment and was told to have an orthopaedic recheck in three days.
Dr. D. Kewalramani, a specialist in physical medicine and rehabilitation, began treating plaintiff in November of 1992.[2] She diagnosed a bulge at the C5-6 level (cervical spine), and spinal stenosis with an indentation of the thecal sac. Dr. Kewalramani did not diagnose a shoulder separation.
Subsequently, plaintiff moved to Florida. In June of 1993 she began treatment with Dr. Martin Hale, an orthopaedic surgeon, and was still under his care when his deposition was taken in September of 1996. Dr. 15Hale testified that plaintiff was 50 years old at the time he started treatment. Dr. Hale testified that he viewed several MRIs of the plaintiffs spine. The thoracic and lumbar MRIs were reported as being with normal limits, however, the cervical MRI showed a bulging disc at the C5-6 level with indentation of the thecal sac and mild spinal stenosis. He also found a right shoulder separation of the acromioclavicular joint. He prescribed conservative treatment. To the date of the deposition, plaintiffs condition showed limited improvement.
Dr. Gordon Nutik, an orthopaedic surgeon, examined the plaintiff in November of 1994, some two years after the accident. At that time, plaintiff complained of pains in her neck with radiation in the right shoulder and shooting pains up to her head, pain in her mid back and shoulder blade area, and pain in her lower back and right hip area, with occasional difficulty in her right leg. Dr. Nutik testified that his examination was limited by the plaintiff, who indicated what she would do, and who told him that “she did not want to be pushed too hard, and she did not want to be forced to move.” Dr. Nutik noted that there was no spasm of the neck muscles and that there was an amount of what appeared to be voluntary restriction of neck movement, while at other times she seemed to be moving her neck through a more normal range of motion. Dr. Nutik felt that the plaintiff was controlling the exam and really had better motion than she was willing to indicate or allow at all times.
IfiDr. Nutik also found some evidence of degenerative disc disease which was on going and apparently had been going on for a long time. Dr. Nutik opined that, as a result of the alleged accident, the plaintiff “might” have suffered soft tissue strains about the neck, mid-back and lower back, which should have been resolved within a reasonable period, or several months following the accident.

ANALYSIS

In this appeal the plaintiff alleges that the jury verdict was contrary to the law and evidence. Plaintiff also contends that the trial judge erred in denying her motion for *1186 judgment notwithstanding ' the verdict (JNOV) or alternatively, motion for new trial.
The appellate standard of review on factual questions is well settled. On appellate review of a factual determination, the reviewing court may not set aside the factfinder’s findings of fact in the absence of manifest error or unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Mann v. Zurich, 97-429 (La.App. 5 Cir. 10/28/97), 702 So.2d 960.
Here, the plaintiff alleges that the jury erred in finding that no accident had occurred. The plaintiff .then alleges that the trial court erred in failing to grant her motion for JNOV or alternative new trial.
La. C.C.P. art. 1811 controls the use of a JNOV. While the article sets forth the mechanics for a motion for judgment notwithstanding the |7verdict, it does not set forth the grounds on which a trial court may grant the motion. However, such criteria has been established by the courts of Louisiana:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of the evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Anderson v. New Orleans Public Service, 583 So.2d 829, 831 (La.1991); Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986); Orgeron v. Prescott, 93-926 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, writ denied, 94-1895 (La.10/28/94).
In evaluating a motion for JNOV, the trial court does not have the discretion to weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. Anderson v. New Orleans Public Service, supra; Morehead v. Ford Motor Co., 29,399 (La.App. 2 Cir. 5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265.
|Jn reviewing the decision of the trial court, the appellate court must determine whether the trial court committed manifest error or was clearly wrong in denying the motion. Morehead, supra.
In this case, plaintiff contends that the jury verdict was erroneous because plaintiffs testimony of the accident was undisputed. Defendant alleges that plaintiff’s testimony contained many inconsistencies and therefore was simply not believed by the jury, who found that an accident did not occur.
A jury can adequately assess the credibility of witnesses and it is the jury’s exclusive province to do so. Mann v. Zurich Ins. Co., supra. An appellate court should not disturb reasonable evaluations of credibility and reasonable inferences of fact made by a jury when the record as a whole reveals a reasonable basis for the finding in the trial court. Darby v. Safeco Ins. Co. of America, 545 So.2d 1022 (La.1989).
Here, the jury viewed all the evidence and concluded that there was no accident as claimed by the plaintiff; therefore, any injury plaintiff may have suffered was not caused by this alleged accident. In making this finding, the jury assessed the credibility of the plaintiff, who was the only person who testified concerning the fact of the accident, and found that her testimony was incredible. This is clearly within the province of the jury.
The. plaintiff alleges that the evidence proves that an accident occurred and therefore the trial court should have granted the motion for JNOV. | (However, the trial court apparently found that reasonable men could have reached the contrary verdict that was reached in this case, namely that the plaintiffs testimony was incredible and that the *1187 accident did not occur, and therefore it denied the JNOV. We conclude that we cannot say that the trial court was in error in making this determination.
The plaintiff also alleged that the trial court erred in denying her motion for new trial. A motion for new trial is governed by different standards. Pursuant to La. C.C.P. art.1972, a new trial shall be granted “when the verdict or judgment appears clearly contrary to the law and evidence”. La. C.C.P. art.1973 gives a trial court discretion to grant a new trial “if there are good grounds therefore.” Unlike a JNOV, the trial court may evaluate the evidence without favoring any party, draw his own inferences and conclusions, and assess the credibility of witnesses when determining whether to grant a motion for new trial. Morehead, supra. The trial court’s discretion is great and will not be disturbed on appeal absent an abuse of that discretion. Morehead, supra.
In the case before us, the trial court heard all the evidence, and obviously found, as did the jury, that plaintiffs testimony was not credible and that no accident had occurred. The trial judge, therefore, denied the plaintiffs motion for a new trial and we clearly do not find that the trial judge abused his discretion in doing so.
lioFor the above reasons, the judgment of the trial court is affirmed. All costs are assessed against plaintiff, appellant.
AFFIRMED.

. Plaintiff's daughter and her fiance did not testify at trial

. Plaintiff was originally treated by Dr. John Olson. However, Dr. Olson did not testify at trial.