STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-661

BYRON P. GUILLORY

VERSUS

JENNIFER D. LEE, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20060160
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Oswald A. Decuir, Judges.

AMENDED IN PART AND, AS
AMENDED, AFFIRMED; REVERSED IN
PART AND RENDERED.

Randall Lee Guidry
503 West University
Lafayette, LA 70506
Telephone: (337) 233-8800
COUNSEL FOR:
	Plaintiff/Appellant - Byron P. Guillory

Ian A. Macdonald
Longman Russo, APLC
P. O. Drawer 3408
Lafayette, LA 70502-3408
Telephone: (337) 262-9000
COUNSEL FOR:
	Defendant/Appellee - Progressive Security Ins. Co.

**Melvin Alan Eiden**
**701 Robley Drive - #210**
**Lafayette, LA 70503**
**Telephone: (337) 981-0309**
**COUNSEL FOR:**
  **Plaintiff/Appellant - Byron P. Guillory**

**Brian K. Abels**
**Boyer & Hebert, LLC**
**133 Aspen Square - Suite F**
**Denham Springs, LA 70726**
**Telephone: (225) 664-4335**
**COUNSEL FOR:**
  **Defendant/Appellee - Cox Communications, La., LLC**

**THIBODEAUX, Chief Judge.**

Plaintiff, Byron P. Guillory, appeals a judgment against his uninsured/underinsured (UM) motorist carrier, Progressive Insurance Company, pursuant to a jury verdict which awarded him less than the special and general damages he sought. He also appeals the jury's refusal to find that the UM carrier was arbitrary and capricious in its handling of his claim. Guillory's motion for a judgment notwithstanding the verdict (JNOV) and for a new trial was denied.

We amend and affirm in part.

## I.

## ISSUES

We must decide:

(1) whether the jury abused its discretion in awarding $40,000.00 for past medical damages;

(2) whether the jury abused its discretion in its award of $10,000.00 in general damages;

(3) whether the jury abused its discretion in refusing to make an award for loss of enjoyment of life;

(4) whether the jury abused its discretion in failing to find the defendant arbitrary and capricious; and

(5) whether the trial court abused its discretion in failing to grant the plaintiff a new trial.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. Guillory and his daughter were traveling in the right turning lane of Kaliste Saloom near its intersection with Camellia in Lafayette, Louisiana, when Mr. Guillory's truck was struck by a sports utility vehicle (SUV) driven by Jennifer Lee. The SUV hit the truck at the left rear quarter panel and bumper, wedging itself under

the bed of the truck and pushing it sideways before releasing it. The passenger side of the SUV then scraped alongside the driver side of the truck for the length of the vehicles, tearing the SUV's passenger side mirror from its bracket and damaging the sides of both vehicles. Mr. Guillory was belted but nevertheless was rotated to the left and thrown forward and back in the cab of his truck. He hit his head on the headrest and bent his right thumb backward on the steering wheel or column. Mr. Guillory sustained various personal injuries, including injuries to his neck, back, jaw, and right thumb.

Ms. Lee was insured by State Farm Insurance but carried only the minimum coverage required by law. Mr. Guillory settled with Ms. Lee and State Farm Insurance, receiving a total of $10,000.00 from those defendants. Mr. Guillory received $5,000.00 in medical coverage from his UM carrier, Progressive, and he subsequently received a tender of $5,020.00 from Progressive after filing suit in 2006. In the almost three years between the accident and the trial, Mr. Guillory underwent treatment for his injuries, including a discogram and two micro discectomies. He submitted medical bills in excess of $98,000.00. At trial, Mr. Guillory asserted that, as a result of the subject accident, he was entitled to special damages for the full amount of his past medical expenses, general damages in an appropriate amount for pain and suffering, damages for loss of enjoyment of life, and damages for future medical expenses. Additionally, he alleged that Progressive was arbitrary and capricious in failing to make a fair and timely unconditional tender based upon his damages and the proof of loss.

The jury awarded Mr. Guillory $40,000.00 for past medical expenses and $10,000.00 for past and future pain and suffering. Mr. Guillory appeals the amounts of both awards. There was testimony that Mr. Guillory would possibly require a two-

level fusion and that the cost would be roughly $12,000.00 to $15,000.00. The jury awarded $10,000.00 for future medical expenses. Mr. Guillory does not appeal that award. The jury made no award for loss of enjoyment of life and found no arbitrary and capricious conduct on the part of Progressive Insurance. Mr. Guillory appeals both of those findings. He also appeals the trial court's judgment denying his requests for JNOV and for a new trial. However, Mr. Guillory did not brief the JNOV issue. We, therefore, consider it abandoned. We will address the remaining issues.

III.

## LAW AND DISCUSSION

### Standard of Review

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

### Past Medical Expenses

Mr. Guillory contends that the jury's award of $40,000.00 was an abuse of discretion where he submitted medical bills for $98,272.32. He argues that medical bills can be determined with exactitude, citing *Stevens v. Winn-Dixie of Louisiana*, 95-0435 (La.App. 1 Cir. 11/9/95), 664 So.2d 1207, and that there is no rationale for the even amount of $40,000.00, as awarded by the jury in this case. Mr. Guillory asserts that the only logical explanations are that the jury ignored the trial court's instruction on the collateral source rule,[1] discounting health insurance payments made on his behalf, and further ignored the instruction regarding the weight

_____

[1]Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's recovery may not be reduced, because of money received by the plaintiff from sources independent of the tortfeasor's contribution. *Boutte v. Kelly*, 02-2451 (La.App. 4 Cir. 9/17/03), 863 So.2d 530, *writ denied,* 04-0071 (La. 5/21/04), 874 So.2d 172.

given to treating physicians. Progressive argues that Guillory had pre-existing conditions, as well as incidents subsequent to the accident at issue, and that the jury merely refused to award damages for unrelated injuries. However, Progressive does not dispute the amounts of the various bills submitted or try to calculate which expenses the jury might have considered related and unrelated.

Mr. Guillory does not deny that he had been in treatment for cervical disc disease for several years prior to this accident on January 14, 2005. Due to a disc herniation at the C5-6 level, Mr. Guillory had undergone a micro surgical discectomy at that level in 1997 and had been in pain management with Dr. Norman Anseman before and after this accident. However, Dr. Anseman testified that Mr. Guillory developed a herniation at C6-7 as a result of this accident that has greatly increased the severity of his neck problems and which could lead to damage of his spinal chord. We have held that a plaintiff's cervical spine injury and degenerative disc disease several years before an accident do not entitle a jury to award less for past medical expenses than the bills for treatment related to the accident at issue. *See Venissat v. St. Paul Fire & Marine Ins. Co.*, 06-987 (La.App. 3 Cir. 8/15/07), 968 So.2d 1063.

The January 14th accident worsened Mr. Guillory's cervical problems, causing a new disc herniation at C6-7, an aggravation and re-injury of the disc at the C5-6 level, aggravation of carpal tunnel syndrome bilaterally, aggravation of temporomandibular joint dysfunction (TMJ), and a left iliolumbar ligament strain that aggravated a prior lumbar condition. Mr. Guillory testified that prior to the accident, he saw Dr. Anseman three or four times a year for spasms in his neck and was treated with trigger point injections which loosened the muscles. Mr. Guillory is an attorney whose hobby and/or pastime is heavy construction and woodworking. He testified that he was able to do anything he wanted to in that regard before the accident, and

4

that he could anticipate the amount of pain that would result by the amount of exertion expended. He indicated that if he read too long at his desk, did roofing work, or poured a foundation, he would take pain medication in the evening. If he did not exert himself, he did not need any medication. Prior to the accident, Mr. Guillory took on average one-half of a Lortab in the evenings.

Mr. Guillory stated that after the accident, he had constant neck and back pain at a higher level, with pain and numbness shooting down his arms, without exertion. He stated that he never had radiating pain in his arms before the January 2005 accident. He did have forearm pain on one visit to Dr. Anseman years before, but it was of a different nature, and not the radiating pain he experienced after the accident. Mr. Guillory also previously had a carpel tunnel release in his left hand, which is his dominant hand, but did not need to have a procedure on his right hand. Mr. Guillory testified that prior to the accident he had a problem with grinding his teeth but he never had to see a specialist about this TMJ problem until after the accident.

The radiating pain that Mr. Guillory suffered in his arms is indicative of the disc injury at the C6-7 level. An MRI done on February 22, 2005, after the January accident, showed a bulging disc at the C6-7 level. Mr. Guillory continued treating with Dr. Anseman in 2005 and had improved significantly by October, but suffered setbacks in 2006. On November 3, 2006, Mr. Guillory had a CT scan showing a herniation at C6-7 and nerve root deformity at C5-6. On the same date he had a myelogram showing nerve root damage at left C-7 and at right C5-6.

When questioned by counsel for Progressive regarding the herniation of the disc at C6-7, Dr. Anseman testified as follows:

Q. Do you attribute that herniation to this accident?

5

A. Yes.

Q. Based upon what?

A. Based upon how he was doing, how he presented to me throughout the years, never having nerve root pain in either arm, never having a neurological deficit in his left arm and now exhibiting signs and symptoms that are compatible with this disc herniation with the . . . the muscles that are weak in his arms are those that are primarily innervated [enervated] by the C7 nerve root, not the C6, not the C5, not the C8 but the C7. And that is compatible with his disc herniation in his neck. He never had that before. And I'm an obsessive/compulsive when I see patients. I always do a neurological exam on patients, and he never once showed weakness down this distribution at any time in the years preceding that automobile accident. . . .

. . . .

There's only one nerve root that's common to the muscles that he is weak in and that's C7. That is the generator of his weakness; that's the generator of his pain.

Dr. Anseman's testimony was taken in April of 2007. He testified at that time Mr. Guillory was a candidate for surgery at the C6-7 level and testified Mr. Guillory was trying to avoid another surgery. In order to avoid surgery, Dr. Anseman testified that he had to administer a significantly increased amount and strength of pain medication which was evident in Mr. Guillory's flow chart of pain medication. He advanced Mr. Guillory from a class three narcotic to a class two narcotic for pain management.

In March of 2007, Mr. Guillory began treating with Dr. Arnold Feldman, an anesthesiologist specializing in pain management. Dr. Feldman testified that he ordered a CT scan and an MRI. The MRI showed disc protrusions which he read as "absolute" herniations on the films themselves at C5-6 and at C6-7. The CT scan likewise was abnormal and showed narrowing of the spinal canal. Dr. Feldman testified that these diagnostic tests correlated with Mr. Guillory's neck and arm pain,

and that his complaints were absolutely consistent in both severity and location. Dr. Feldman ultimately had Mr. Guillory undergo a painful discogram, a procedure during which the doctor injected dye, causing the two discs to bulge for a split second to determine whether discectomies were warranted. The procedure was performed in an operating room setting.

The results were positive at both levels. Dr. Feldman performed the C5-6 discectomy on October 3, 2007, shortly before trial. The C6-7 discectomy was scheduled October 29, 2007, the day after Mr. Guillory's testimony was given at trial. The cost of the first discectomy was $48,822.00 and Dr. Feldman testified that the one performed during trial should be about the same. However, the bills submitted by Mr. Guillory for Dr. Feldman's expenses totaled $75,698.00. Dr. Feldman reviewed Dr. Anseman's records and testified that Mr. Guillory's symptoms and objective findings after the accident on January 14, 2005 indicate that the accident was a contributing factor for the pinched nerves at C5-6 and C6-7.

Progressive argues that Mr. Guillory caused the disc bulge at C-7, which appeared for the first time on the February 2005 MRI, to escalate into a herniation when he worked on his fishing camp after Hurricane Rita in the Fall of 2005. Progressive claims the herniations and nerve root damage did not appear until the cervical myelogram and CT scan were done on November 3, 2006. Mr. Guillory testified he did not do heavy work at the camp, as there was no structural damage, but did only small scale debris removal and supervision. He testified he did not even swing a hammer. Dr. Anseman's records indicate a setback in Mr. Guillory's symptoms due to work at the camp between the October 2005 and February 2006 visits.

7

However, Dr. Anseman pointed out that Mr. Guillory had C-7 signs and symptoms in his arms for the first time after the accident, prior to the camp episode. This testimony is corroborated in the February 22, 2005 MRI showing the disc bulge at C6-7 and Dr. Anseman's report on March 24, 2005 showing cervical radiculopathy on the right at C-7. At that time, Dr. Anseman also reported lumbar spondylosis with possible S1 radiculopathy and soft tissue injury to the right thumb. In April 2005, Dr. Anseman reported ligamentous damage at C5-6. None of the injuries at C6-7 existed prior to the January 2005 accident, and none of the aggravated injuries at the C5-6 level existed after the 1997 surgery at that level until after the January 2005 accident. The evidence indicates that the accident caused the bulge. The fact the injury could have escalated to a herniation while Mr. Guillory performed light activities does not negate the fact that the auto accident caused the disc problem at C-7. There was no evidence of trauma at the camp. Progressive further argues that a fender bump in a parking lot incident in November 2005 could also have been a cause of the disc herniation. However, once again, the record contains no evidence of trauma after the January 2005 accident. The rupture at C6-7 had already begun in February 2005 as evidenced by the February 22nd MRI.

Progressive argues that the physician who conducted the independent medical examination on behalf of Progressive, Dr. Vic Parmar, opined that Mr. Guillory's herniated disc was not caused by the January 2005 accident because the February MRI did not show a herniation at C6-7. As previously indicated, that MRI did show a bulging disc at C6-7. Dr. Parmar, an orthopedist, met with Mr. Guillory for one hour in July 2007, took a history, apparently misunderstood part of that history, and rendered an opinion without studying Dr. Anseman's records, which had been provided to him. Dr. Parmar did admit that he had no reason to think that Mr.

8

Guillory was untruthful. He reported that Mr. Guillory's triceps were absent reflexes bilaterally, which was evidence of C-7 nerve root injury and dysfunction, just as Dr. Anseman had stated. Dr. Parmar also admitted that the myelogram, which showed the C6-7 herniation in November 2006, is the gold standard in his field and can show causes of pain that the CT and MRI do not show.

Mr. Guillory asserts that the jury's award of $40,000.00 in past medical expenses is not supported by the evidence and, moreover, is not subject to any logical interpretation. He asks valid rhetorical questions: If the jury did not believe that the injuries and surgeries were caused by the subject accident, why did it award damages for future medical expenses three years after the accident? And, why did it award part but not all of Dr. Feldman's expenses, all of which were incurred three years after the accident? More specifically, Mr. Guillory points out that his medical expenses prior to treating with Dr. Feldman were around $20,000.00, yet the jury awarded twice that much in past medical expenses. Therefore, the jury must have included some of Dr. Feldman's expenses in its award. As Dr. Feldman testified that both his treatment of Mr. Guillory and the discectomies he performed were a result of the subject accident, we find the jury award contrary to the law and evidence.

Similarly, in *Abshire v. Wilkenson,* 01-75 (La.App. 3 Cir. 5/30/01), 787 So.2d 1158, the plaintiff had prior neck problems. The jury rendered a verdict awarding the plaintiff $9,980.00 in past medical expenses from the date of the accident through his treatment with one certain physician. However, three physicians all agreed that the accident aggravated the plaintiff's pre-existing condition and resulted in the need for surgery. There was testimony that surgery was not needed before the accident. This court found that the plaintiff therein was entitled to recover medical expenses for his surgery and his post-surgical care since these were a

9

consequence of the subject accident. In *Abshire*, 798 So.2d 1158, which we find analogous to the present case, we amended the judgment of the trial court to award past medical expenses of $77,991.20. Accordingly, we amend the award of past medical expenses to Mr. Guillory from $40,000.00 to $98,272.32.

**General Damages**

In this case, the jury awarded $10,000.00 in general damages to Mr. Guillory. This amount, awarded three years after the accident, represents past and future pain and suffering. Mr. Guillory argued that this amount was abusively low. Mr. Guillory testified that prior to the accident he had pain flare-ups depending on the level of his activities. After the accident, he had constant pain in his neck and back and shooting pain down his arms *without* activity. In addition to the testimony previously discussed regarding Mr. Guillory's inability after the accident to do heavy construction, the testimony shows he also has to be very careful of every mechanical move he makes, where he sits, and how far up he tilts his head. We also note Dr. Anseman reported prior to the accident Mr. Guillory did not have pain upon coughing or sneezing. After the surgery, he exhibited pain symptoms after these common static activities.

One aggravation of a pre-existing condition that no one has discussed in much detail is the TMJ. The record indicates that Mr. Guillory's treatment with Dr. Pearce for the first time regarding the TMJ, included handouts containing over twenty rules of "do's and don't's," but mostly "don't's" regarding the position of his head while doing normal daily activities like standing, sitting, laying, walking, looking, etc.

Mr. Guillory's physical pain also took a toll on him emotionally and mentally. Mr. Guillory testified his wife was in an accident with a bus and sustained

10

a form of brain damage that prevented her from being able to bathe or cook without help. Prior to his accident, Mr. Guillory provided most of the care for his wife. After his accident, he could no longer do many of the things she needed. At the time of trial, he testified his young teenage daughter took on those responsibilities. Accordingly, he worried constantly about them and what they might be going through that they would never burden him with, things they weren't telling him. Mr. Guillory also had frustrations and concerns after the accident because he could no longer be the super-dad with his daughter, riding four-wheelers with her and working the duck blinds with her. He worried constantly about re-injury, feeling the weight of responsibility of not hurting himself any worse and incurring more restrictions.

The aggravation of Mr. Guillory's lumbar problems has not led to any surgeries. The worst injury was to Mr. Guillory's neck. Mr. Guillory sustained a disc injury at C-7 which resulted in a herniation and radiculopathy with pain radiating into both arms. Neck injuries are aggravated, not only by physical labor or exertion, but also by everyday stress at work, including mental stress working at a desk and on a computer. Mr. Guillory is an attorney by profession. Therefore, in his case, stress is an occupational hazard and is unavoidable. While he lost some work time after the accident, he felt that it was inappropriate to make a claim for it since he is self-employed and feels that he could somehow make up the time. The record indicates a history for Mr. Guillory of pushing through various levels of pain and stress.

As a result of this accident, Mr. Guillory's pain medication was increased in strength and frequency. Hydrocodone in the form of Lortab 7.5 was increased to maxidone 10. Acetaminophen went from 325 milligrams to 750 milligrams. Dr. Anseman also prescribed seroquel for sleep. He gave Mr. Guillory lidoderm patches (novocaine in patch form), which did not help him. Dr. Anseman

11

then went from maxidone to avinza, a morphine sulfate preparation, and added lyrica, the gold standard for nerve pain. Dr. Anseman testified that nerve root pain can be very severe and difficult to manage. He further testified Mr. Guillory did not have to deal with nerve root pain before the accident. Additionally, Mr. Guillory has to manage his pain and his medication without interfering with his thinking processes at work.

Ultimately, the increase in pain medication was not enough. Mr. Guillory had to undergo the painful discogram and the two discectomies described by Dr. Feldman. At trial, Mr. Guillory testified that the first and very recent discectomy seemed to relieve the pain in his arms, but he thought the neck pain was worse. Dr. Feldman testified that it was too soon to know whether the discectomies would be successful. If not, the next step is a two-level fusion, from which it takes six months to recover. That will mean more pain medication as well. Dr. Parmar, who agrees that fusion would be the next step, and who might actually perform the fusion, testified that he requires the patient to wear a collar, to prevent him from looking down, for two weeks, and after that the patient can do no manual labor, or hunt, or lift more than ten to fifteen pounds. Three years of past physical and mental pain and suffering and the probability of ongoing pain and suffering, of the nature evidenced in the record, does not support the jury's total award of $10,000.00 for all past and future physical and mental pain and suffering. We agree that the award is abusively low and amend the award to $150,000.00.

**Loss of Enjoyment of Life**

The jury declined to award Mr. Guillory damages for loss of enjoyment of life. As a threshold matter, we note that the Louisiana Supreme Court has

12

recognized this loss as a separate element of monetary damage. *See McGee v. A C And S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770.

Mr. Guillory testified that prior to this accident, he could do anything that he wanted to do such as heavy construction, roof work, foundation work, or playing music. He built his camp board by board over the years, as well as an addition to his house; he did plumbing lines if need be; he was a regular at the home improvement stores. He testified that he might pay for over-exertions, but he could manage the pain with the judicious use of his pain medication and by choosing how much he wanted to accomplish. However, after this accident, he had pain without activity; Dr. Anseman advanced him to a higher class of narcotics; and, he still could not do many of the things he enjoyed, including being the kind of father and husband that he wanted to be. The record indicates that Mr. Guillory made a significant improvement over the summer of 2005, but the bulging disc began to rupture and he had a lot of pain in 2006. Dr Anseman restricted him to lifting no more than twenty pounds for the remainder of his life. In February of 2007, Dr. Anseman diagnosed Mr. Guillory with bilateral C-7 radiculopathy; bilateral C-7 root lesion; and administered cervical epidural steroid injections for the first time.

Progressive argues that because Mr. Guillory went elk hunting once a year with a client, took a couple of fishing trips, and took his wife to Las Vegas for their anniversary, he has not suffered any loss of enjoyment of life. However, some of Mr. Guillory's traveling has been work-related, and no dates are provided for these excursions. The record indicates that the island fishing trip may have taken place in the summer of 2005 when Mr. Guillory was receiving benefits from his treatment, after the bulge at C6-7 was reported, but before it developed into a herniation. Mr. Guillory was in his mid-forties at the time of the accident, and he tried to follow Dr.

13

Anseman's orders regarding swimming and lifting weights at the appropriate times during his treatment. He is not alleging that he has been rendered an invalid and is entitled to compensation for loss of enjoyment of life on that scale for the remainder of his life. He is seeking appropriate damages.

Dr. Anseman testified on April 17, 2007, that in addition to the post-accident restriction of not lifting more than twenty pounds for the remainder of his life, he had given Mr. Guillory other instructions regarding his neck and extension. For example, he did not want him going to a basketball game and looking up, nor sitting out on the two yard line in the first row bleachers at LSU stadium and looking up at kickoffs. Dr. Anseman testified that these restrictions are much more severe than any that he had given before the accident because now that Mr. Guillory had bilateral symptoms, he was in danger of damaging his spinal chord, which would require emergency surgery. Dr. Anseman stated that Mr. Guillory had to be obsessive/compulsive about what he did with his neck, how he worked at his computer, and he had to eliminate all mechanical stress as much as he possibly could. These concerns and limitations were expressed by Dr. Anseman after the January 2005 accident and before the treatment and surgeries performed by Dr. Feldman in October of 2007.

As previously indicated, the first of those surgeries appears to have helped arm pain but increased neck pain. A two level fusion has already been discussed, with its additional recovery period, and more severe restrictions on Mr. Guillory's daily activities, and on his work and family life. The record clearly supports a finding that he has suffered a daily loss of enjoyment of life which was continuing at trial and will continue in the future, whether he has the two-level fusion surgery or not. Consequently, we award $24,000.00.

14

## Arbitrary and Capricious Conduct

Mr. Guillory purchased UM coverage from Progressive in the amount of $250,000/$500,000. He argues that Progressive was arbitrary and capricious in failing to make a timely second tender after it had knowledge of the plaintiff's injuries, causation, and the fault of the underinsured driver, Jennifer Lee. He also argues the jury abused its discretion in failing to so find.

In this case, Progressive paid Guillory $5,000.00 under the medical pay portion of Guillory's policy, then filed suit against the parents of the seventeen-year-old Jennifer Lee to recover the $5,000.00, alleging she was 100% liable for the accident. Subsequently, Progressive made an unconditional tender to Guillory for $5,020.00 after he rejected that amount as a full and final settlement. At no time did Progressive make another tender to Guillory for his damages. The following time line will clarify the sequence of events regarding this time sensitive issue.

| | |
|---|---|
| 1/14/05 | Date of Accident. |
| 1/21/05 | Plaintiff put Progressive on notice via fax attaching police report and statements of Guillory and Lee. |
| 1/21/05 | Sally Jones gave a telephone statement to Progressive stating that Lee was at fault, swerving in and out of lanes, and hit Guillory. |
| 1/10/06 | Progressive filed suit against Lee to recover $5,000.00 Medical payment to Guillory, alleging her to be solely at fault for the accident. |
| 1/11/06 | Guillory filed suit against Lee, State Farm, and Progressive. Progressive subsequently answered, asserting affirmative defense that Lee was not at fault. |
| 2/10/06 | Guillory sent Progressive proof of loss in the form of medical records of Dr. Anseman (including 2/22/05 MRI showing new disc bulge at C6-7), and records of Drs. |

|          |                                                                                                                                                                                                                                                                                                                                                           |
|----------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|          | Domingue, Vreeland, and Pearce. The bills totaled $11,957.00.                                                                                                                                                                                                                                                                                              |
| 2/22/06  | Progressive made unconditional tender of $5,020.00, after Guillory rejected that amount as a full and final settlement.                                                                                                                                                                                                                                     |
| 5/10/06  | Progressive amended its answer to assert sudden emergency and the fault of the Cox Cable van driver.                                                                                                                                                                                                                                                        |
| 5/18/06  | Progressive transcribed the statements of Sally Jones and Mr. Guillory which had been taken on 1/21/05.                                                                                                                                                                                                                                                     |
| 6/21/06  | Guillory made request for McDill tender, setting forth his pre-existing cervical problems and eight new post accident diagnoses; asked to schedule depositions of Jennifer Lee, Amy Young and Sally Jones. Depositions did not take place until June 2007.                                                                                                    |
| 8/8/06   | Progressive dismissed its suit against Lee and State Farm before depositions were taken.                                                                                                                                                                                                                                                                    |
| 3/20/07  | Dr. Anseman sent his medical records to Progressive, including diagnostic test reports from November 2006, showing herniation at C6-7 and deformity at C5-6.                                                                                                                                                                                                 |
| 3/21/07  | Guillory began treating with Dr. Feldman.                                                                                                                                                                                                                                                                                                                  |
| 3/26/07  | Progressive increased its reserves from $29,000 to $75,000.                                                                                                                                                                                                                                                                                                |
| 4/17/07  | Progressive deposed Dr. Anseman, who testified that accident caused new injuries, herniation at C6-7, and attendant problems.                                                                                                                                                                                                                               |
| 6/05/07  | Jennifer Lee, Amy Young, and Sally Jones were deposed.                                                                                                                                                                                                                                                                                                     |
| 7/03/07  | Guillory requested a McDill tender for general damages via nine-page letter summarizing depositions and indicating a potential claim for bad faith.                                                                                                                                                                                                          |

| 7/20/07 | Guillory underwent Progressive's IME with Dr. Parmar, who testified that accident did not cause the disc herniation at C6-7. |
|---|---|
| 7/26/07 | Guillory amended suit to add bad faith claims. |
| 9/07/07 | Guillory sent letter to Progressive attaching bills from Dr. Feldman in the amount of $16,100.00. |
| Oct. 2007 | Guillory underwent a discogram and two discectomies, bringing Dr. Feldman's bills up to $75,698.00. |

Mr. Guillory argues that Progressive knew that it was liable and that there was causation because Progressive sued Lee, alleging her to be 100% at fault at the same time it defended Guillory's suit by stating an affirmative defense that Lee was not at fault. Moreover, Progressive never sued Cox to recover the $5,000.00 medical payment. Progressive argues that it had a reasonable basis not to make a second tender, but rather to defend the claim, and to act in good faith reliance on that defense where there were questions regarding causation and the extent of related damages. However, our review of the time line of events indicates that Progressive was arbitrary and capricious in failing to timely resolve those issues.

More specifically, Progressive did not transcribe the January 2005 statements of Guillory and an independent witness, Sally Jones, until May 18, 2006, almost a year and a half after the accident. The depositions of Lee, her passenger, Amy Young, the Cox van driver, Shannon Vice, and witness Sally Jones, were not taken until June of 2007, two and a half years after the accident. In fact, Progressive dismissed Lee and State Farm in August 2006, ten months before the depositions took place in June 2007. The testimony in those depositions confirmed the fault of Jennifer Lee. Lee testified that the Cox van may not have crossed over into her lane after all. Young testified that Lee was on her cell phone while the van was

17

approaching and that Young had to alert Lee of the van's presence. Young also testified that the movement of the van was gradual, not sudden. Jones testified as before, in her January 2005 statement, that she never saw the van, and that she only saw Lee swerving and driving erratically and then hitting Mr. Guillory. The insurer is required to take substantive and affirmative steps to accumulate the facts necessary to evaluate a claim. *See McClendon v. Economy Fire & Cas. Ins. Co.,* 98-1537 (La.App. 3 Cir. 4/7/99), 732 So.2d 727. Progressive was arbitrary and capricious in not taking the depositions in a timely manner.

Mr. Guillory asserts that Progressive should have made a second tender within thirty days of Dr. Anseman's deposition on April 17, 2007 -- when medical bills were approximately $20,000.00, when he was still in treatment, and when surgery was being discussed. Mr. Guillory points out that Dr. Parmar's opinion, after the IME on July 20, 2007, cannot provide the basis for refusing to pay amounts due within thirty days, or within sixty days, after Dr. Anseman's testimony on April 17th. We agree. In the month before Dr. Anseman's deposition, Progressive increased its reserves from $29,000.00 to $75,000.00. Progressive's adjustor testified that reserve figures represent a worse-case-scenario amount and not a case evaluation amount. Mr. Guillory does not suggest that the tender should have been $75,000.00. Rather, he suggests that a reasonable tender would have been one-half of $75,000.00, or $37,500.00, minus the $10,020.00 that he had received from Progressive, and minus the $10,000.00 received from State Farm, for a total tender of $17,480.00. At that point, he had already exhausted the $20,020.00 received from State Farm and Progressive, he was still in treatment, and his candidacy for surgery had been discussed. Mr. Guillory's request is a modest one; under the facts of this case, we agree with Mr. Guillory's calculation.

18

Mr. Guillory is seeking penalties, attorney fees, and costs for Progressive's arbitrary and capricious conduct under La.R.S. 22:658. He specifically asserts that the 2006 version of La.R.S. 22:658 applies to this 2005 accident. Under the 2006 version, the claimant is entitled to all damages incurred plus a penalty of fifty percent (50%) damages on the amount found to be due or, in the case of a partial tender, fifty percent (50%) of the difference between the amount tendered and the amount that should have been tendered, plus attorney fees and costs. Prior to its 2006 revision, La.R.S. 22:658 provided for a lower penalty of twenty-five percent (25%) of the amount found to be due, with no provision for attorney fees or costs.

In general, La.R.S. 22:658 provides that an insurer is subject to these penalties when it fails to pay the amount of any claim due any insured within thirty (30) days after receipt of satisfactory proofs of loss. Additionally, under La.R.S. 22:1220, an insured can recover two times the amount of the damages caused by the breach if the insurer knowingly fails to pay a claim within sixty (60) days of receipt of proof of loss when that failure is arbitrary, capricious, or without probable cause. An insured cannot recover penalties under both statutes, but can recover penalties under one statute and attorney fees and costs under the other, depending upon the time line at issue. *See Gibson v. Allstate Ins. Co.*, 02-892 (La.App. 3 Cir. 12/11/02), 832 So.2d 1209.

The Louisiana Supreme Court in *Sher v. Lafayette Ins. Co.*, 07-2441 (La. 4/08/08), 988 So.2d 186, held that La.R.S. 22:658 is substantive law and cannot be applied retroactively. The effective date of the amendment changing the penalty from twenty-five percent (25%) to fifty percent (50%) and adding attorney fees and costs, was August 15, 2006. Mr. Guillory filed suit in January 2006. His first transmission of medical bills and Progressive's first tender occurred in February 2006, almost six

months before the August effective date of the 2006 amendment. However, it is well settled that the duty of an insurer to evaluate and re-evaluate claims is a continuing duty as satisfactory proof of loss accrues and is provided to the insurer. In determining whether any events occurring after August 15, 2006 will entitle Mr. Guillory to attorney fees and costs under the amended statute, we turn to the Supreme Court decision in *Sher v. Lafayette Ins. Co.*

In *Sher*, the original date of loss was August 29, 2005, when Hurricane Katrina struck New Orleans and damaged the five-unit apartment complex owned and occupied by Mr. Sher. He provided notice to his insurer, the claim was assigned, and his property was inspected in 2005. Two checks totaling approximately $2,800.00 were issued, but Mr. Sher disputed the amount of damages, did not cash the checks, and continued to send additional invoices and repair estimates to his insurer. He ultimately filed suit on August 28, 2006, about two weeks after the amendment to La.R.S. 22:658 became effective. In denying Mr. Sher recovery under the 2006 amendment, the *Sher* court articulated as follows:

> Here, although an insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period, the claim first arose prior to the amendment of R.S. 22:658. Because the duty is a continuing one, had plaintiff not first made satisfactory proof of loss prior to the amendment of R.S. 22:658, his petition for damages served after the amendment became effective could have served as satisfactory proof, thereby triggering the time period set forth in the statute and could have subjected Lafayette to the penalties contained in the amendment because the claim would have first arisen after the amendment. *Further, again because the duty is a continuing one, had plaintiff made satisfactory proof of loss prior to the amendment and had Lafayette paid that claim, and had plaintiff discovered new damage and made satisfactory proof which Lafayette failed to pay within the time period contained in the statute, but after the amendment became effective, Lafayette could have been subject to the penalties contained in the amendment because the claim would have arisen after the effective*

20

> *date of the amendment.* Neither of those situations is the case here--the claim for the penalties contained within the statute arose prior to the effective date of the amendment. Plaintiff's argument that Lafayette's continuing breach of the duty of good faith and fair dealing made it subject to the increased penalties contained in the amended version of R.S. 22:658 is without merit.

*Sher v. Lafayette Ins. Co.*, 988 So.2d at 199 (emphasis added).

In the present case, Mr. Guillory's diagnosis of a post accident bulging disc at C6-7 occurred with the MRI report on February 22, 2005. That report, along with other medical records supporting other injuries and aggravations, and bills totaling approximately $12,000.00, was sent to Progressive on February 10, 2006. On February 22, 2006, Progressive tendered $5,020.00. Progressive had already paid $5,000.00 under the medical pay coverage, and Mr. Guillory had received $10,000.00 from State Farm. Accordingly, it appears that the claim for medical damages was paid up, with some surplus, as of February 2006. As Mr. Guillory continued to receive treatment, and continued to incur expenses, he asked for another tender in June 2006, which was rejected.

Numerous diagnostic tests were done on November 3, 2006, indicating, among other things, that the bulging disc at C6-7 was now a herniation, and that there was further damage at C5-6. Dr. Anseman sent those records to progressive on March 20, 2007, prior to his deposition on April 17, 2007. Therefore, we find that under *Sher,* Mr. Guillory's claim for these damages constitutes a claim that arose *after* the August 15, 2006 amendment to La.R.S. 22:658. Progressive should have made a tender at least within 30 days of Dr. Anseman's deposition. Accordingly, an award for attorney fees and costs is appropriate under the 2006 amended version of La.R.S. 22:658.[2]

---

[2]Mr. Guillory does not seek to recover double the damages caused by the breach of duty under La.R.S. 22:1220, which he could substitute for the 50% penalty on damages due under La.R.S.

## Denial of New Trial

Mr. Guillory asserts that the trial court erred in not granting him a new trial. A new trial is mandatory when the "verdict or judgment appears clearly contrary to the law and the evidence." La.Code Civ.P. art. 1972. In considering such a motion, the trial judge must determine whether the verdict was supported by any fair interpretation of the evidence. *Martin v. Heritage Manor South Nursing Home*, 00-1023 (La. 4/3/01), 784 So.2d 627. The trial court may evaluate the evidence, draw its own inferences and conclusions, and evaluate witness credibility to determine whether the jury erred in giving too much credence to an unreliable witness. Unlike the requirement in considering a motion for JNOV, the judge is not required to view the evidence in the light most favorable to the non-movant. The appellate court reviews the trial court's decision on a motion for a new trial under an abuse of discretion standard. *Id.*

Mr. Guillory argues the evidence, which we have thoroughly outlined above, supports a new trial. Dr. Anseman and Dr. Feldman, both treating physicians, related Mr. Guillory's injuries to the January 2005 accident. Dr. Parmar admitted that he had no reason to doubt Mr. Guillory's truthfulness. He confirmed Mr. Guillory's injuries and helped to quantify potential future surgery with its attendant limitations. The evidence supports the jury's allocation of fault to Jennifer Lee alone, with no allocation of fault to Mr. Guillory. However, the evidence does not support the jury's awards of damages.

At the hearing on the motion for a new trial, the trial judge indicated that, if he were free to interpret the evidence and do what he thought was fair, he would grant Mr. Guillory's motion on every count. The judge stated that there were no

---

22:658. Because Mr. Guillory had health insurance and did not provide proof of damages *caused by the breach* under La.R.S. 22:1220, we will calculate his penalty under La.R.S. 22:658 alone.

credibility issues with Mr. Guillory.  He further stated that he was "troubled" by the amount awarded for past medical expenses because he had not "found a way to make that fit any particular factual conclusions that could have been reached by the jury." We believe that a fair interpretation of the evidence is exactly what is required under *Martin* and that the jury failed in its responsibility and abused its discretion in its awards.

We find that the jury's awards of $40,000.00 for past medical expenses and $10,000.00 for general damages are contrary to the evidence, and that the trial court abused its discretion in failing to grant a new trial on these issues.  However, we also find that the record provides sufficient information for this court to determine proper awards without remand.  La.Code Civ.P. art. 2164.  Accordingly, where there were no arguments regarding the amounts of the individual medical provider's bills as presented, we will increase the award for past medical expenses from $40,000.00 to $98,272.32, the full amount of Mr. Guillory's medical expenses including the treatment and discectomies by Dr. Feldman.

Likewise, the $10,000.00 awarded for general damages is insufficient to compensate Mr. Guillory for past and future pain and suffering.  After finding that the lower court abused its discretion in making an award, an appellate court may revise the award to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded that court.  *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

Our research in this circuit and other circuits indicates that the lowest amount of general damages reasonably within the jury's discretion is $150,000.00. *See Littleton v. Wal-Mart Stores, Inc.*, 99-390 (La.App. 3 Cir. 12/1/99), 747 So.2d 701, *writ denied,* 00-804 (La. 5/5/00), 761 So.2d 546 ($150,000.00; ruptured disc at C5-6, disc removal, and fusion resulting from plaintiff moving out of the way to avoid

23

a falling box); *Thibodeaux v. Wal-Mart Stores, Inc.*, 98-556 (La.App. 1 Cir. 4/1/99), 729 So.2d 769, *writ denied*, 99-1244 (La. 6/18/99), 745 So.2d 28 ($150,000.00; bicycle fell on plaintiff's neck resulting in three level cervical fusion); *Babineaux v. Lykes Bros. Steamship Co., Inc.*, 608 So.2d 659 (La.App. 3 Cir. 1992), *writ denied*, 610 So.2d 819 (La.1993) ($175,000.00; surgery for two herniated discs); *McLemore v. Fox*, 565 So.2d 1031 (La.App. 3 Cir.), *writs denied*, 569 So.2d 966 and 569 So.2d 968 (La.1990) ($300,000.00 for auto accident resulting in multiple cervical surgeries and social security disability). *Desselle v. LaFleur*, 03-562 (La.App. 3 Cir. 2/4/04), 865 So.2d 954 (modest impact and property damage not determinative; $350,000.00 affirmed for objective findings of cervical injuries; recommended *future* anterior cervical discectomy/fusion at the C5-6, C6-7 levels; over a year of pain since accident; future pain from surgeries). *Jenkins v. Sonat Offshore U.S.A. Inc.*, 96-2504 (La.App. 1 Cir. 12/29/97), 705 So.2d 1184 ($200,000.00 for physical pain and suffering, and $50,000.00 for mental anguish and loss of enjoyment of life; cervical discectomy and anterior cervical fusion after fall from stack of casing to rig deck).

Based upon our earlier analysis, we find that Mr. Guillory is entitled to an award for loss of enjoyment of life. Our research indicates that the lowest award for loss of enjoyment of life in this case is $24,000.00. *See Basco v. Liberty Mut. Ins. Co.,* 05-0143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660 (awarded $44,000.00 for past and future loss of enjoyment of life); *Thibodeaux v. Bernard*, 00-72 (La.App. 3 Cir. 11/2/00), 772 So.2d 897 (awarded $35,000.00); and *Ryan v. Zurich American Ins. Co.* 07-618 (La.App. 3 Cir. 10/31/07), 970 So.2d 42, *reversed on lost earnings award only,* 07-2312 (La. 7/1/08), 988 So.2d 214 (awarded $24,000).

Based upon our analysis above of the conduct of Progressive in handling the claims of Mr. Guillory, we find arbitrary and capricious conduct and award a penalty of fifty percent (50%) of the difference between zero, as no tender was made,

and $17,480.00, which would have been a reasonable tender. Accordingly, we award a penalty of $8,740.00, plus attorney fees and costs. Mr. Guillory has asked for a remand on the issue of attorney fees and costs. He has not asked for the fees to include the work done on appeal. In the interest of judicial economy, we make, without remand, an award for $25,000.00 for attorney fees and costs for the litigation of this matter in the court below.

IV.

## CONCLUSION

Based upon the foregoing, we affirm the jury's finding of fault. We reverse the trial court's denial of a new trial on all counts and find the record evidence sufficient to render appropriate awards without remand. We amend the trial court's award of past medical expenses by increasing the award from $40,000.00 to $98,272.32. We further amend the trial court's award of general damages by increasing it from $10,000.00 to $150,000.00 for past and future physical and mental pain and suffering. We reverse the trial court's denial of damages for loss of enjoyment of life and render an award of $24,000.00 for that element of damages, past and future. Finally, we reverse the trial court's denial of damages for arbitrary and capricious conduct of the defendant, Progressive Insurance, and award a penalty of $8,740.00 plus attorney fees and costs in the amount of $25,000.00. Judicial interest is due on all awards. Costs of this appeal are assessed to the defendant, Progressive Insurance Company.

**AMENDED IN PART AND, AS AMENDED, AFFIRMED; REVERSED IN PART AND RENDERED.**

25